RECORD NO. 13-2390

In The

# United States Court of Appeals

### For The Fourth Circuit

JAY NEIL AND ERIKA K. NEIL,

*Plaintiffs-Appellants,*

v.

WELLS FARGO BANK, N.A. d/b/a WELLS FARGO HOME MORTGAGE,

*Defendant-Appellee,*

And

BWW-LAW GROUP, LLC,

*Defendant-Appellee,*

And

EQUITY TRUSTEES, LLC,

*Defendant-Appellee,*

And

BANC OF AMERICA FUNDING CORP., 2005-4 TRUST,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## OPENING BRIEF OF APPELLANT

Christopher E. Brown, Esq. VSB#39852
Jessica M. Carter, Esq. VSB#81952
Brown, Brown & Brown, P.C.
6269 Franconia Road
Alexandria, VA 22310
Tel: 703.924.0223
Fax: 703.924.1586
brownfirm@lawyer.com

Todd Lewis, Esq. VSB # 73732
The Lewis Law Group, P.C.
2200 Wilson Blvd., Suite 102-50
Arlington, Virginia 22201
Tel: 202.550.9898
Fax: 703.894.2881

*Attorneys for Plaintiffs-Appellants*

# RULE 26.1 STATEMENT

Jay Neil and Erika K. Neil are individual Plaintiffs and are not a publicly

held entity or corporate organization.


Date:   January 6, 2014

_____/s/_____
Jessica M. Carter, Esq. VSB#81952
Attorney for Appellants
6269 Franconia Road
Alexandria, VA  22310
(703) 924-0223

# TABLE OF CONTENTS

**Page**

RULE 26.1 STATEMENT ....................................................................... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTION STATEMENT ...............................................................1

ISSUES PRESENTED FOR REVIEW .....................................................2

STATEMENT OF THE CASE ................................................................3

    A. NATURE OF THE CASE ...............................................................3

    B. COURSE OF PROCEEDINGS .......................................................3

        1. JUDGE HILTON'S SEPTEMBER 04, 2013, ORDER ...................4

        2. JUDGE HILTON'S  OCTOBER 25, 2013 ORDER .......................6

STATEMENT OF FACTS .....................................................................7

    A. PARTIES ....................................................................................7

    B. FACTS ......................................................................................8

SUMMARY OF ARGUMENT ..............................................................11

STANDARD OF REVIEW ...................................................................12

    A. APPEAL OF GRANT OF 12(B)(6) MOTION TO DISMISS ...............12

ARGUMENT ....................................................................................13

    I. BREACH OF CONTRACT – ISSUE #1 ...........................................13

    II. SLANDER OF TITLE  – ISSUE #2 ................................................25

    II. ABUSE OF PROCESS  – ISSUE #3 ...............................................28

    II. REMOVE CLOUD ON TITLE – ISSUE #4 .....................................30

CONCLUSION .................................................................................32

## TABLE OF CONTENTS

**Page**

REQUEST FOR ORAL ARGUMENT ................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Ansanelli v. JP Morgan Chase Bank, N.A.,
　　No. C 10– 03892 WHA, 2011 WL 1134451 (N.D.Cal. Mar. 28, 2011) ......18

Asbury v. Am.'s Servicing Co.,
　　No. 2:llcv99, 2011 U.S. Dist. LEXIS 87552 (E.D. Va. July 13, 2011) .21, 25

Bosque v. Wells Fargo Bank, N.A.,
　　762 F.Supp.2d 342 (D.Mass. 2011) .............................................................14

Allen v. CitiMortgage, Inc.,
　　2011 WL 3425665 (D.Md. 2011) ...............................................................14

Bosque v. Wells Fargo Bank, N.A.,
　　762 F.Supp.2d 342 (D.Mass. 2011) ............................................................14

Condel v. Bank of America, N.A.,
　　2012 WL 2673167 (E.D. Va., July 5, 2012) ...............................................23

Corvello v. Wells Fargo Bank NA.,
　　11-16234 (9th Cir., Aug. 8, 2013) ....................................................3, 12, 24

Day v. Vaughn & Usilton, Inc.,
　　193 Va. 168, 67 S.E.2d 898 (1951) ...........................................................31

Donohoe Const. Co., Inc. v. Mount Vernon Associates,
　　235 Va. 531, 369 S.E.2d 857 (1988) .........................................................28

Durmic v. J.P. Morgan Chase Bank, N.A.,
　　2010 WL 4825632, at *3 (D.Mass. Nov. 24, 2010) ....................................17

Federal Land Bank v. Parks,
　　170 Va. 240, 196 S.E. 627 (1938) ..............................................................32

Feldman v. Rucker,
　　201 Va. 11, 109 S.E.2d 379 (1959) ...........................................................32

Filak v. George,
　　267 Va. 612, 619, 594 S.E.2d 610 (2004) ..................................................15

# TABLE OF AUTHORITIES

**Page(s)**

Foothill Capital Corp. v. East Coast Bldg. Supply,
    259 B.R. 840 (E.D.V.A., 2001) ...................................................21

Franks v. Ross,
    313 F.3d 184 (4th Cir. 2002) ...................................................13

GE Inv. Private Placement Partners II v. Parker,
    247 F.3d 543 (4th Cir. 2001) ...................................................12

Glidewell v. Murray-Lacy,
    124 Va. 563, 98 S.E. 665 (1919) ...........................................28, 30

Legore v. OneWest Bank, FSB,
    2012 WL 4903087 (D.Md. Oct. 15, 2012) ...............................14

Lucy v. Zehmer,
    196 Va. 493, 84 S.E.2d 516 (1954) .........................................16

Mylan Labs., Inc. v. Matkari,
    7 F.3d 1130 (4th Cir. 1993)......................................................12

Montagna v. Holiday Inns, Inc.,
    269 S.E.2d 838 (Va. 1980) .......................................................15

Mullins v. Sanders,
    54 S.E.2d 116 (Va. 1949) ....................................................28, 30

Nash v. Green Tree Servicing, LLC, *et al.,*,
    Civil Action No.: 1:12-cv-278 (E.D.Va. May 2013) ...............14, 19-23, 25

Presidential Garden v. Salisbury,
    802 F.2d 106 (C.A. 4(Va.), 1986) ...........................................32

Robertson v. Sea Pines Real Estate Cos.,
    679 F.3d 278 (4th Cir. 2012).....................................................26

Smith v. Woodward,
    122 Va. 356, 94 S.E. 916 (1918)..............................................32

# TABLE OF AUTHORITIES

**Page(s)**

Sutcliffe v. Wells Fargo Bank, N.A.,
   283 F.R.D. 533 (N.D.Cal. 2012) ...............................................14

Wigod v. Wells Fargo Bank, N.A.,
   673 F.3d 547 (7th Cir. 2012)................................. 3, 12, 14, 17, 24

Wilfredo v. Bank,
   762 F.Supp.2d 342 (D. Mass., 2011)..................................... 16-17

Wilson v. Draper & Goldberg, P.L.L.C.,
   443 F.3d 373 (4th Cir., 2006) ...............................................21

Wilson v. L.B. Holyfield,
   227 Va. 184, 313 S.E.2d 396 (1984) . ........................................21

## RULES

Fed. R. Civ. Pro. 12(b)(6)........................................................*passim*

## OTHER AUTHORITIES

Restatement (Second) of Contracts §317(1)(1981)....................................9, 11

## JURISDICTION STATEMENT

### *District Court's Subject-Matter Jurisdiction*

The U.S. District Court for the Eastern District of Virginia (Alexandria Division) had subject-matter jurisdiction. The cause of action filed by Plaintiffs concerned their home, located in the county of Fairfax, Virginia, where they reside. (J.A. at 6, ¶6). The initial cause of action concerning the foreclosure of Plaintiffs home was brought against Wells Fargo Bank, N.A. (a national banking association charted in Sioux Falls, South Dakota), Wells Fargo Home Mortgage (an operating unit of Wells Fargo Bank, N.A., located in Des Moines, Iowa), and BWW-Law Group, LLC (a Virginia Professional Limited Liability Company). (J.A. at 5). Wells Fargo Bank, N.A. removed the case from Fairfax County, Virginia to the United States District Court for the Eastern District of Virginia (Alexandria Division) pursuant to 28 U.S.C. §§1332, 1441 and 1446. (J.A. at 5). Removal was based upon complete diversity between Plaintiffs and Wells Fargo, BWW being a nominal defendant pursuant to 28 USCS §1441(b)(2), and more than $75,000, exclusive of interests and costs, being at stake. (J.A. at 6). Pursuant to 28 USCS §1446(b), the removal was timely, as Wells Fargo had not yet been served. (J.A. at 7, Notice of Removal, Dkt#1). BWW consented to removal. (J.A. at 7, ¶11). Removal was not contested by Appellants.

***Fourth Circuit Subject-Matter Jurisdiction***

The district court's Order of September 4, 2013, granting the 12(b)(6) Motion to Dismiss of Wells Fargo Bank, N.A. and BWW Law Group, LLC, disposed of all parties' claims. (J.A. at 168). Plaintiffs subsequently filed a Motion for Reconsideration, which was denied by Order dated October 25, 2013. (J.A. at 235). Plaintiffs-Appellants timely filed their Notice of Appeal on November 12, 2013, appealing the court's Orders of September 4, 2013 and October 25, 2013. (J.A. at 236). This timely filed appeal was docketed November 14, 2013. (J.A. at 239). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1).

## ISSUES PRESENTED FOR REVIEW

1.     Whether the district court erred when granting the Motion to Dismiss as to Breach of Contract (Count I) on the basis that Plaintiffs have no contractual right to a modification and the agreement is not supported by consideration.

2.     Whether the district court erred in holding Plaintiffs were in default and/or Plaintiffs conceded default, and thus, Plaintiffs asserted no slanderous or false words and Slander of Title (Count II) must fail.

3.     Whether the district court erred in holding Plaintiffs were only asked to make payments under the original terms of the Loan, and thus, the Abuse of Process claim (Count III) must fail.

4.     Whether Plaintiffs were required to allege they satisfied the debt encumbering the Property for Remove Cloud on Title (Count IV) to survive.

## STATEMENT OF THE CASE

### A. Nature of the Case

There is often a certain preconceived, unconscious notion that surrounds causes of actions by borrowers challenging a home foreclosure.  Appellant requests and trusts that this Court will take care in reviewing the case at hand, as this case involves diligent homeowners that never missed a payment, were labeled with a default status, and endured foreclosure. Both the Ninth and Seventh Circuits have reviewed and addressed contractual language at issue in the case at hand, drafted by the same author.   *See* Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 564 (7th Cir. 2012) and Corvello v. Wells Fargo Bank NA, 11- 16234 (9th Cir., Aug. 8, 2013)(per curiam).

### B. Course of Proceedings

This is an appeal by Plaintiffs/Appellants Jay Neil and Erika K. Neil of the Orders of the Honorable Judge Hilton of the U.S. District Court for the Eastern District of Virginia, entered on September 04, 2013 (J.A. at 168) and October 25, 2013 (J.A. at 235).

The Amended Complaint asserted ten (10) counts, four (4) of which are before this Court on Appeal.[1]

---

[1] Below Appellants conceded Breach of Covenant of Good Faith and Fair Dealing (Count VI),        Promissory Estoppel (Count VII), and Violation of RESPA (Count X), as such, those counts are not at issue on appeal.  Further, in an effort to simplify and hone attention toward the foundation of Appellants' cause of action,

Appellees Wells Fargo and BWW filed a 12(b)(6) Motion to Dismiss the Amended Complaint for failure to state a claim and Memorandums in Support on July 17, 2013.  (J.A.  at 3).

Appellants filed an Opposition to Appellees' Motion to Dismiss and subsequently filed a Notice of Supplemental Authority in support of their position on August 20, 2013. (*see* J.A. at 3).

Oral arguments concerning Appellees' Motion to Dismiss were to be heard by the court on August 30, 2013. (*see* J.A. at 3).  On August 29, 2013, the court notified the parties that the hearing was cancelled and the matter would be decided on the papers. (*see* J.A. at 3).

### 1. Judge Hilton's September 4, 2013 Order

On September 4, 2013, the district court granted Appellees' Motion to Dismiss, dismissing the Amended Complaint in its entirety, including those claims against Equity Trustees, LLC and Banc of America Funding Corp., 2005-4 Trust, who had not yet made an appearance in the case.[2] (J.A. at 168).

---

Appellants are not appealing the dismissal of Count IX (Equitable Action to rescind the foreclosure) or Count V (Tortious Interference with the Contract) or Count VIII (Breach of Fiduciary Duty).

[2] Equity Trustees, LLC and Bank of America Funding Corp., 2005-4 Trust were not in default at the time when the case was dismissed.  As of the date of the filing of this brief, said defendants have made no an appearance in this cause of action, below nor on appeal.

The district court granted Defendants' Motion to Dismiss Count I (Breach of Contract) on the bases that "Plaintiffs have no contractual right to a loan modification" and the contract "is not supported by consideration and does not constitute an enforceable contract." (J.A. at 164-165, Mem. Op. at pg. 3-4).

The District Court Granted Defendants' Motion to Dismiss Count II (Slander of Title) on the bases that "Plaintiffs fail[ed] to allege slanderous or false words and concede that they were not current on the Note at the time of the foreclosure sale." (J.A. at 165, Mem. Op. at pg. 4).

The district court granted Defendants' Motion to Dismiss Count III (Abuse of Process) on the basis that "Plaintiffs were merely asked to make payments under the original terms of their loan." (J.A. 165 - 166, Mem. Op. at pg. 4-5).

The District Court Granted Defendants' Motion to Dismiss Count IV (Remove Cloud on Title) on the basis that "Plaintiffs do not allege that they have satisfied the debt encumbering the Property." (J.A. at 166, Mem. Op. at pg. 5).

The District Court Granted Defendants' Motion to Dismiss Count V (Tortious Interference with the Contract) on the basis that "as an agent of the lender, Wells Fargo cannot interfere with the relationship between the lender and borrower." (J.A. at 166, Mem. Op. at pg. 5).

The District Court Granted Defendants' Motion to Dismiss Count VIII (Breach of Fiduciary Duty) on the basis that "Without a successful modification,

Wells Fargo was free to exercise all the rights and remedies under the Note and Deed of Trust. Plaintiffs were in default, and Equity Trustee's, LLC properly proceeded with the foreclosure." (J.A. at 166-167, Mem. Op. at pg. 5-6).

The District Court Granted Defendants' Motion to Dismiss Count IX (Equitable Action to Rescind the Sale) on the basis that "[t]here is no equitable claim to rescind a foreclosure sale in Virginia." (J.A. at 167, Memo. Op. at pg. 6).

On September 14, 2013, Appellants filed their Motion for Reconsideration, seeking the court reconsider its September 4, 2013 decision. (J.A. at 169). It was opposed by Appellees Wells Fargo and BWW on September 24, 2013. (J.A. at 201). After the Appellants' Rebuttal was filed on October 18, 2013, the court notified the parties on October 22, 2013 that the Motion for Reconsideration would be decided on the papers, and the hearing on the matter, scheduled for October 25, 2013, was cancelled. (*see* J.A. at 4).

### 1. Judge Hilton's October 25, 2013 Order

On October 25, 2013 the district court denied Appellants' Motion for Reconsideration of the court's September 4, 2013 Order on the basis that its previous ruling was correct for the reasons stated in the September 4th Order. (J.A. at 235).

## STATEMENT OF FACTS

### A. Parties

6

Appellants, Jay Neil and Erika Neil (hereinafter "the Neils"), were the owners of the Property, subject to a lien. (J.A. at 10 - Am. Compl. ¶3).

Defendant/Appellee Banc of America Funding Corp., 2005-4 Trust ("Banc of America") has been identified as the current owner of the indebtedness secured by the Property. (J.A. at 21 -- Am. Compl. ¶¶65-66; J.A. at 90 – Deed of Appointment of Substitute Trustee).

Appellee Wells Fargo Bank, N.A. is a national banking association that acts and operates as a mortgage lender. Appellee Wells Fargo Home Mortgage is an operating unit of Wells Fargo Bank, N.A. (collectively Wells Fargo Bank N.A. and Wells Fargo Home Mortgage are referred to as "Wells Fargo").  Wells Fargo was initially the owner of the Loan and has maintained servicing rights/is the purported agent for the new owner of the indebtedness.

Defendant/Appellee Equity Trustees, LLC ("Equity") acted as substitute trustee under the deed of trust, including for purposes of foreclosure.  (J.A. at 90 – Deed of Appointment of Substitute Trustee).

Appellee BWW-Law Group, LLC ("BWW") acted as attorney for the substitute trustee, Equity and/or as substitute trustee under the deed of trust, including for purposes of foreclosure. (J.A. at 12, Am. Compl. ¶65).

**B. Basic Facts**

On or about June 17, 2005, the Neils obtained a loan ("the Loan") from Wells Fargo in the amount of $604,000, secured by a deed of trust on the Property. (J.A. at 10 - Am. Compl. ¶3). The Neils' payments were to occur monthly, in the amount of $3,476.97, beginning August 1, 2005. . (J.A. at 11 - Am. Compl. ¶6). The total annual sum to be paid by the Neils for the subject Loan equaled $41,723.64. (J.A. at 11 - Am. Compl. ¶8).

In 2008, although they had never missed a payment, the Neils, like many other households, were concerned due to the declining economy. (J.A. at 11 - Am. Compl. ¶9). The Neils addressed their concerns with a proactive approach, submitting their First Loan Modification Application ("First Modification") to Wells Fargo. (J.A. at 12 - Am. Compl. ¶12). The First Modification was denied on June 24, 2009. (J.A. at 12 - Am. Compl. ¶13). The Neils continued to timely submit payments. (J.A. at 12 - Am. Compl. ¶13).

A few months later, in October 2009, Wells Fargo offered the Neils an unsolicited, customized Trial Period Plan Agreement ("TPP") based upon the financial information the Neils previously provided for the First Modification. (J.A. at 13 - Am. Compl. ¶21; J.A. at 77 – TPP pg. 1). The offer letter indicated the TPP payments were to "**be sent instead of, not in addition to, [the Neils']
normal monthly mortgage payment**" and that "[i]f the trial period payments

[were] made in amounts different from the amount stated [their] loan may not be modified." (J.A. at 12 - Am. Compl. ¶15(e); J.A. at 78 – TPP, bottom of page)(emphasis in original). On or about November 1, 2009, the Neils signed two copies of the TPP Agreement and provided Wells Fargo with the first monthly TPP payment in the amount of $2,655.77. (J.A. at 14 - Am. Compl. ¶23). As of the day the first TPP payment was due, the Neils had paid a total of **$170,371.53** on the Loan, were not in default or behind on the mortgage, and had a near-perfect credit history / score. (J.A. at 14 and 15 - Am. Compl. ¶¶25, 32).

Per the terms of the TPP, the Neils "under[stood] and agree[d] that the Lender [would] not be obligated or bound to make any modification of the Loan Documents if [they] fail[ed] to meet any one of the requirements under [the TPP]." (J.A. at 82 – TPP Section 2(G)). The TPP indicates that if the Neils complied with the requirements in Section 2 of the TPP, and their representations in Section 1 continued to be true in all material respects, then Wells Fargo would send them a Modification Agreement to permanently modify their loan. (J.A. at 82-83 – TPP Section 2).

### Section 1 of the TPP

Section 1 of the TPP states that "If I have not already done so . . ." and sets forth information that must be provided. (J.A. at 81 – TPP, second paragraph). Per Wells Fargo, the information provided to Wells Fargo during the First

Modification application fulfilled the Neils' TPP obligations to provide the Section 1 financial information, including the hardship affidavit, IRS Form 4506-T, and income information of both Mr. and Mrs. Neil. (J.A. at 13 - Am. Compl. ¶¶21, 22). The Neils' circumstances remained unchanged at or around the time of the Neils' final TPP payment. (J.A. at 14 - Am. Compl. ¶27). The Neils also agreed to obtain credit counseling if so required by the Lender per Section 1 of the TPP.  (J.A. at 81 – TPP).

### Section 2 of the TPP

Section 2 of the TPP required the Neils submit three (3) reduced monthly payments, all of which the Neils timely submitted in the amount required and were accepted by Wells Fargo. (J.A. at 14 and 16 - Am. Compl. ¶¶26, 37).

The Neils complied with both Section 1 and Section 2 of the TPP.  (J.A. at 18 and 26 -- Am. Compl. ¶¶47, 48, 92).

Following the final payment contemplated by the TPP agreement, Wells Fargo instructed the Neils that their modification had not yet been processed and they were to continue making TPP payments in the amount set forth in the agreement. (J.A. at 14 - Am. Compl. ¶28). As directed by Wells Fargo, the Neils continued making payments of the amount contemplated by the TPP. (J.A. at 17 - Am. Compl. ¶40).  In the end, Wells Fargo extended the TPP for an additional total of approximately seven (7) months. (J.A. at 16 - Am. Compl. ¶39).  On or around

10

September 1, 2010, Wells Fargo informed the Neils that, after processing the Neils information in its possession for over a year, the Neils were denied a permanent modification. (J.A. at 18 - Am. Compl. ¶50).

According to the TPP  "[Wells Fargo was to] hold the payments received during the Trial Period in a non-interest bearing account until they total[ed] an amount that [was] enough to pay [the Neils'] oldest delinquent monthly payment on [their] loan in full." (J.A. at 82 – TPP 2(D)). No delinquent payment existed when the Neils entered into the TPP. (J.A. at 14 - Am. Compl. ¶25). Wells Fargo notified the Neils at the end of the TPP payments that they were past due and that Wells Fargo was accelerating the Loan. (J.A. at 17 -Am. Compl. ¶¶43, 45).  The past due amount included the difference between the amount of the TPP payments and the Neils normal monthly payment for the time during which the Neils made the payments contemplated by the agreement, and during the seven (7) months the TPP payments were extended by Wells Fargo. (J.A. at 16 - Am. Compl. ¶39).

Wells Fargo scheduled six (6) foreclosure sales. (J.A. at 22 - Am. Compl. ¶72).  The Neils home was ultimately sold at foreclosure on March 7, 2013. (J.A. at 19 - Am. Compl. ¶56).

## SUMMARY OF ARGUMENT

At the core of the lower court's dismissal of the Amended Complaint is the position that the Neils were in default and/or conceded default.   However, the

Neils were forced into default, and had the terms of the TPP been adhered to by Wells Fargo, the Neils would not have endured foreclosure and damages stemming from the breach. The Neils' position on this Appeal is aligned with two decisions handed down by the Seventh and Ninth Circuits in <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547, 564 (7th Cir. 2012) and <u>Corvello v. Wells Fargo Bank NA</u>, 11- 16234 (9th Cir., Aug. 8, 2013), which held Wells Fargo entered into an enforceable contract with the borrowers therein and was obligated to extend a permanent modification according to the terms agreed upon by the parties. Said case precedent was neither followed nor acknowledged by the lower court. The lower court's decision is in conflict with those holdings.

## <u>STANDARD OF REVIEW</u>

### A. Appeal of Grant of 12(b)(6) Motion to Dismiss

This Court reviews de novo the dismissal of a complaint for failure to state a claim upon which relief could be granted. <u>GE Inv. Private Placement Partners II v. Parker</u>, 247 F.3d 543, 548 (4th Cir. 2001). Such a motion to dismiss made under Rule 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering such a motion, "the court should accept as true all well-pleaded allegations and

should view the complaint in a light most favorable to the plaintiff." Id.  *See also*

Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

## ARGUMENT

### I.    Breach of Contract – Issue #1 [3]

#### A. Introduction

The Neils' claims are not based on any assertion that Defendant-Appellees

did not comply with HAMP guidelines, any Servicer Participation Agreement, or

any Servicing Contract that they entered into with the government or Fannie Mae.

Those guidelines, agreements, and contracts govern Defendant-Appellees'

obligations to the Treasury Department / Fannie Mae, not Plaintiffs. The

Defendant-Appellees' third-party contracts entered into upon their choosing to

participate in the HAMP program do not bar Plaintiffs' claims. Defendant-

Appellees could not and cannot independently bargain away the Neil's personal

right to bring a cause of action for breach of the contract to which the Neils were a

party, the TPP. Defendant-Appellees' separate agreements that the Neils have no

interest in, and to which they were/are not a party or a mere third-party beneficiary

do not affect their claims.

---

[3] Issue #1 of the "Issues Presented" set forth herein wholly pertains to Appellants'
Breach of Contract claim (Count I).  It, however, contains two (2) parts, and thus,
Appellants will identify those subparts in the appropriate subheadings as
"Consideration (Issue #1, part 1)" and "Permanent Modification was Required
(Issue #1, part 2)" for ease and organizational purposes.

The mere terms of the TPP agreement are at issue. Wells Fargo assumed the risk of contractual liability when it entered into the TPP Agreement with the Neils. To hold otherwise would create a slippery slope, indicating that all entities are immune from liability, regardless of the act or damage caused, so long as said act or damages can be linked in some way, shape, form or fashion to HAMP. That simply cannot be the case.

"Ultimately, courts have recognized that a plaintiff may bring a private cause of action for breach of contract stemming from a TPP Agreement. Nash v. Green Tree Servicing, LLC, 2013 U.S. Dist. LEXIS 63157 (E.D. Va. May 2, 2013)(*citing* Stovall v. SunTrust Mortg., Inc., 2011 WL 4402680 (D. Md. 2011); Allen v. CitiMortgage, Inc., 2011 WL 3425665 (D.Md. 2011) (holding that plaintiffs may assert a breach of contract claim based on TPP Agreement)); Legore v. OneWest Bank, FSB, 2012 WL 4903087 (D.Md. Oct. 15, 2012)); *accord* Bosque v. Wells Fargo Bank, N.A., 762 F.Supp.2d 342, 352-353 (D.Mass. 2011)(TPP is a valid contract); Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 550 (N.D.Cal. 2012) (TPP is a valid contract); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 560-561 (7th Cir. 2012) (TPP is a valid contract).

## B. Court's Basis for Dismissal of Breach of Contract (Count I)

The lower court stated two reasons for dismissing the Neils' Claim for Breach of Contract against Defendants: (1) the TPP was not an enforceable

contract for lack of consideration, and (2) Plaintiffs have no contractual right to a loan modification. (J.A. at 164-165, Mem. Op. pg. 3 - 4). Those reasons can be reconciled with neither the facts pled in the Amended Complaint nor leading caselaw.

### C. The TPP is an Enforceable Contract

In Virginia, "the elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach . . ." <u>Filak v. George</u>, 267 Va. 612, 619, 594 S.E.2d 610 (2004). Those elements are all satisfied in the Amended Complaint.

**1. Enforceable Obligation.** The TPP agreement between the Neils and Wells Fargo is a legally enforceable obligation, as there was "acceptance of an offer, as well as valuable consideration." <u>Montagna v. Holiday Inns, Inc.</u>, 269 S.E.2d 838, 844 (Va. 1980) (citations omitted).

### (a) *Offer*

Wells Fargo offered the "customized" TPP to the Neils by letter (with enclosures) dated October 6, 2009. (J.A. at 77; Am. Compl. ¶16). The customized offer included, in part, the following language: "Detailed instructions on what you need to do to take advantage of this offer are set forth . . ."; **"LET US KNOW THAT YOU ACCEPT THIS OFFER"**; "Please let us know no later than

15

11/01/09 that you accept the Trial Period Plan"; "To **accept this offer,** and see if you qualify for a Home Affordable Modification . . ." (*see* J.A. at 77-78). Those explicit terms constituted an offer, as "the law imputes to [Wells Fargo] an intention corresponding to the reasonable meaning of [its] words and acts." Lucy v. Zehmer, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954) (citations omitted).

### (b) *Acceptance*

On or around November 1, 2009, the Neils signed two copies of the TPP Agreement and submitted their first monthly payment, as required by the TPP. (J.A. at 14 - Am. Compl. ¶23). They timely paid all payments contemplated by the TPP, all of which Wells Fargo accepted. (J.A. at 14 and 16 - Am. Compl. ¶¶26, 37). The Neils' acceptance of Wells Fargo's offer is clear. *See* Wilfredo v. Bank, 762 F.Supp.2d 342 (D. Mass., 2011)("Through its signature line and detailed description of the dates and manner by which the borrower submits monthly payments, the TPP indicates a straightforward method of acceptance").

### (c) *Consideration* (Issue #1, part 1)

The district court incorrectly held that "the TPP merely required Plaintiffs remit mortgage payments – something they were already required to do." (J.A. at 164 - Mem. Op. at pg. 3). Under the terms of the TPP, the Neils were required to do more than merely submit the already required payments. The Neils were not in default when they entered into the TPP. (J.A. at 15 - Am. Compl. ¶32). Upon

16

receiving the TPP, they were required to submit the lowered TPP payments
"instead **of, not in addition to, [their] normal monthly payments.** [And,] [i]f the
trial period payments [were] made in amounts different from the amount stated
[the Neils risked that their] loan may not be modified." (J.A at 78 - TPP offer letter
at bottom of pg. 2)(emphasis in original). "[U]nder the TPP, [the Neils] were
required to provide documentation of their current income, make legal
representations about their personal circumstances, and agree to undergo credit
counseling if requested to do so.... [and] could also be required to make payments
into a newly established escrow account." Wilfredo v. Bank, 762 F.Supp.2d 342,
352 (D. Mass., 2011)(*quoting* Durmic v. J.P. Morgan Chase Bank, N.A., 2010 WL
4825632, at *3 (D.Mass. Nov. 24, 2010)); *also see* J.A. at 81, TPP at Section 1;
J.A. at 86, Wells Fargo ltr dated Oct. 6, 2009 regarding credit counseling ("a
requirement of your Trial Period Plan")). "In exchange for Wells Fargo's
conditional promise to modify [their] home mortgage, [the Neils] undertook
multiple obligations above and beyond [their] existing legal duty to make mortgage
payments. This was adequate consideration, as a number of district courts
adjudicating third-generation HAMP cases have recognized." Wigod at 564 (*citing*
In re Bank of America Home Affordable Modification Program (HAMP) Contract
Litigation, No. 10–md–02193–RWZ, 2011 WL 2637222, at *4 (D.Mass. July 6,
2011) (multi-district litigation) ("The requirements of the TPP all constitute new

legal detriments."); <u>Ansanelli v. JP Morgan Chase Bank, N.A.</u>, No. C 10–03892 WHA, 2011 WL 1134451, at *4 (N.D.Cal. Mar. 28, 2011) (same)). The district court erred in holding no contract existed for lack of consideration. The Neils were required to do more than merely submit mortgage payments as already legally obligated.

In sum, the TPP is an enforceable legal obligation, as there exists a valid offer and acceptance supported by consideration.

## B. *Wells Fargo Breached its Obligations Under the TPP*

### (i)    *Misallocation of Payments*

According to the contract, "[Wells Fargo was to] hold the payments received during the Trial Period in a non-interest bearing account until they total[ed] an amount that [was] enough to pay [the Neils'] oldest delinquent monthly payment on [their] loan in full." (J.A. at 82 – TPP Section 2(D); Am. Compl. ¶33). No delinquent payment existed when the Neils entered into the TPP, as they were not in default at the time of entering into the agreement. (J.A. at 14 and 15 - Am. Compl. ¶¶25, 33). Thus, the Neils' payments were to be applied in accordance with the loan documents regarding the allocation of amounts for principle and interest, regardless of the TPP interest rate. (J.A. at 27 - Am. Compl. ¶99). This is because the TPP specifically states that "except to the extent that they are modified by this Plan . . ."

> all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents

(J.A. at 83 - TPP Section 4(B) and 4(D); *Also see* J.A. at 80 -- TPP at pg. 4 "Your first trial payment will be applied to your existing loan in accordance with the terms of your loan documents"). Wells Fargo used the TPP to create a default; it immediately began labeling the Neils as delinquent. (J.A. at 16 - Am. Compl. ¶34). Acceleration Notices began being sent to the Neils during the time that they were submitting their TPP payments. (J.A. at 21 - Am. Compl. ¶68). Wells Fargo's improper treatment and allocation of the Neils' payments is the only reason they were labeled with a default status. "[] Defendants would have the Court find that each and every TPP agreement, as a matter of course, results in a default on the underlying loan." Nash v. Green Tree Servicing, LLC, *et al.,* Civil Action No.: 1:12-cv-278, *13 (E.D.V.A. May 2, 2013). "In other words, [Wells Fargo, as servicer of the loan, takes the position that] simply by making a payment in the amount requested in each monthly TPP statement, the borrower cannot avoid default, regardless of his or her precise compliance with the terms of the TPP Agreement." Nash v. Green Tree Servicing, LLC, *et al.,* Civil Action No.: 1:12-cv-278, *13 (E.D.V.A. May 2, 2013). The judicial system "refuses to accept that the

19

TPP program necessarily requires such a veiled pitfall for borrowers when the resulting default has been induced by the loan servicer." Nash v. Green Tree Servicing, LLC, et al., Civil Action No.: 1:12-cv-278, *13 (E.D.V.A. May 2, 2013). To accept that "logic [would] contradict[] the purpose of TPP agreements and would result in perverse incentives for servicers to induce default where none existed prior to its involvement. The borrower instead is protected by the promise of a permanent modification if the borrower complies with the prerequisites, pursuant to the TPP contract." Nash v. Green Tree Servicing, LLC, et al., Civil Action No.: 1:12-cv-278, *13 (E.D.V.A. May 2, 2013).

Wells Fargo further created a default at the end of the TPP by demanding immediately due the difference between the TPP payments and the regular loan payments. (J.A. at 27 - Am. Compl. ¶99). At the end of the payments contemplated by the TPP, the Neils were notified by Wells Fargo that they were past due and the Loan was being accelerated. (J.A. at 17 -- Am. Compl. ¶¶43, 45).

### (ii)     Foreclosure was Prohibited

When entering into the TPP, the Neils were informed – expressly in writing - that "[a]s long as [they] compl[ied] with the terms of the Trial Period Plan, [Wells Fargo would] not start foreclosure proceedings . . ." (J.A. at 80 – TPP offer ltr). The Neils fully complied with the terms of the TPP and were not in default upon entering into the TPP. (J.A. at 15 and 18 - Am. Compl. ¶¶32, 47). Yet, Wells

Fargo breached the contract by scheduling six (6) foreclosure sales. (J.A. at 22 - Am. Compl. ¶72). The home was sold at foreclosure on March 7, 2013. (J.A. at 19 - Am. Compl. ¶56).

### (iii) Permanent Modification was Required (Issue #1, part 2)

The lower court erred in holding the Neils have no contractual right to a loan modification, relying upon Nash v. Green Tree Servicing, LLC, 2013 U.S. Dist. LEXIS 63157 (E.D. Va. May 2, 2013) and Asbury v. Am.'s Servicing Co., No. 2:llcv99, 2011 U.S. Dist. LEXIS 87552 (E.D. Va. July 13, 2011). (*see* J.A. at 164 – Mem. Op. at pg. 3).

The lower court erred in relying upon Nash when holding the Neils have no contractual right to a loan modification. This is because the TPP that the Neils and Wells Fargo entered into contains language greatly differing from the TPP reviewed by the Court in Nash. (*compare* J.A. at 81 (the Neils' TPP) and J.A. at 190 (Nash TPP)).[4] The following distinct language found in the Nash TPP indicates precisely why the claims in Nash did not concern a breach resulting from

---

[4] "It is the duty of the court to construe a contract as written . . . and courts are bound to say that the parties intended what the written instrument plainly declares." Wilson v. L.B. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396 (1984) (dissenting opinion). "[T]he cardinal rule in any action involving contract interpretation is that courts uphold the intent of the contracting parties as expressed through contractual language. Foothill Capital Corp. v. East Coast Bldg. Supply, 259 B.R. 840 (E.D. Va., 2001) (*citing* Bender-Miller Co. v. Thornwood Farms, Inc., 211 Va. 585, 588, 179 S.E.2d 636 (1971).

the failure to extend a permanent modification, and why a decision in favor of the Neils would not open the floodgates to litigation under trial period plan agreements.  The Nash TPP states as follows:

> If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) ***the Lender determines that I qualify***, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

(J.A. at 198 - Nash TPP at Section 3 ("The Modification")(emphasis added)). Notably, the Nash TPP sets forth a reservation of subjective determination regarding approval for a permanent modification. Id. *Also see* Nash v. Green Tree Servicing, LLC, 2013 U.S. Dist. LEXIS 63157, at *4 (E.D. Va. May 2, 2013)(noting the servicer's subjective determination delineated in the agreement). The TPP in the case at hand, however, does not.  As can be noted in the language provided below, permanent modification in this case was merely contingent upon the Neils complying with the conditions precedent agreed upon by the parties:

> If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

(J.A. at 82 – TPP at section 3 ("The Modification)).

Most TPP agreements contain language similar to that found in the Nash TPP. This explains the language of the court in Nash and Wells Fargo's citations of law that "**most courts** have also concluded that a borrower cannot sue for breach-of-contract directly under his TPP agreement - for instance, where a servicer declines to grant a permanent loan modification at the conclusion of the trial period." Nash at *7 (*quoting* Condel v. Bank of America, NA, 2012 WL 2673167, at *6 (E.D. Va. July 5, 2012)(emphasis added). It is understandable that "most courts" have held such, as most have reviewed TPPs that are unlike the one at issue in this case, because *most* TPPs reserve subjective determination of qualification for permanent modification, as did the Nash TPP. The absence said reservation within the TPP currently before the court is logical. At the time the TPP was offered to the Neils, Wells Fargo had recently reviewed the Neils financial information when processing the Neils' "First Loan Modification Application." (J.A. at 11 - Am. Compl. ¶11).

Falling outside of the realm of "most courts" decisions pertaining to TPPs that reserve subjective determination is caselaw providing directly applicable holdings that provide guidance. In fact, much, if not all of that caselaw involves TPPs drafted by Wells Fargo, the defendant in this case. It seems Wells Fargo has made it an industry practice to *not* preserve subjective determination; it is the

architect of the contract, and thus, of this litigation. "The leading case on the contractual obligations of banks under TPP agreements is the Seventh Circuit's decision in <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547 (7th Cir. 2012)." <u>Corvello v. Wells Fargo Bank NA</u>, 11-16234, at pg *10 (9th Cir., Aug. 8, 2013)(per curiam).

The Seventh Circuit Court of Appeals, in reversing the dismissal of a class action against Wells Fargo, addressed language identical to that found in the Neils' TPP. <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547 (7th Cir. 2012). And, the Ninth Circuit Court of Appeals, in reversing the dismissal of two consolidated cases against Wells Fargo, also reviewed language at issue in the case at hand. <u>Corvello v. Wells Fargo Bank NA</u>, 11-16234 (9th Cir., Aug. 8, 2013)(per curiam). In those cases, both the Seventh Circuit and Ninth Circuit held that Wells Fargo is required, pursuant to the terms of the TPP agreements, to offer permanent modifications to borrowers who complete their obligations under the agreement. <u>Corvello</u> at 10. (*citing* <u>Wigod</u> at 562–63). Wells Fargo "[] cannot convert a purported agreement setting forth clear obligations into a decision left to [its] unfettered discretion . . ." <u>Corvello</u> at 12.

The Neils complied with the requirements and obligations under the TPP. (*supra* at facts). As such, the contractual language is explicit in stating Wells Fargo was required to extend a permanent modification. Leading caselaw and the terms

of the Neils' TPP indicates the lower court erred in dismissing the Neils' Breach of Contract claim (Count I).  Further, the court's reliance upon <u>Nash</u> was improper given the language of the Nash TPP clearly differed from that in the case *sub judice*.

Likewise, the court improperly relied upon <u>Asbury</u> in holding that Plaintiffs' claim for Breach of Contract fails "because Plaintiffs have no contractual right to a loan modification."   The Neils' position herein is actually supported by the decision of the court in <u>Asbury</u> to remand the plaintiff's state-law contract and tort causes of action.  In remanding the plaintiff's state-law contract and tort claims, the court in <u>Asbury</u> held that "[a]lthough the state-law claims brought by Plaintiff involve facts regarding HAMP procedures, federal courts have determined that 'it is not necessary for the Court to interpret or apply HAMP in order to evaluate the merits of these common law claims.'" <u>Asbury</u> at *9 (*quoting* <u>Forbes v. Wells Fargo Home Mortg.</u>, No. 4:10cv160, slip op. at 7 (E.D. Va. March 18, 2011).

## II.     Slander of Title – Issue #2 - The Neils Do Not Concede Default

When reviewing the Motion to Dismiss, the court was to "take the complaints' factual allegations as true and draw all reasonable inferences in plaintiffs' favor." <u>Robertson v. Sea Pines Real Estate Cos.</u>, 679 F.3d 278, 284 (4th Cir. 2012). The court held the Neils "*concede* that they were not current on the Note at the time of the foreclosure sale." (J.A. 165 – Mem. Op. at pg. 4)(emphasis

added). That was in err as its holding was an adoption of the Defendants' factual assertions, not Plaintiffs.' (*see* J. A. at 135 - Ds' Reply in Support of Motion to Dismiss ("Plaintiffs concede they were not current on the Note at the time of the foreclosure sale . . . ")). The Neils did not concede default. They asserted, plead, and the fact remains that they were not in default at the time of entering into the TPP, and Wells Fargo used the TPP to create a default.

As the court's holding was an adoption of the Defendants' factual assertions, it is noteworthy that Defendants later abandoned those assertions. On Motion for Reconsideration, rather than asserting the Neils "concede" default, Wells Fargo and BWW argued the "[the Neils] cannot credibly assert they were not in default at the time of the foreclosure." (*see* J.A. at 205, Dkt#27, pg. 5).[5] Defendants' abandonment of their prior misleading assertions, however, does not resolve the fact that the court adopted such in its holding when dismissing the Amended Complaint, and the court's position remained unchanged, as the Motion for Reconsideration was denied based upon the facts stated within the court's previous order. (*see* J.A. at 235 – Order re Motion for Reconsideration).

The Neils having pled that the foreclosure occurred in the absence of default, a claim for slander of title based upon the foreclosure was properly pled. In a cause

---

[5] *Also see* J.A. at 205, D's Opp to Motion for Reconsideration (Wells Fargo and BWW expressly note the Neils allege they were not in default but for the defunct TPP).

of action for Slander of Title "the plaintiff must prove that the defendant maliciously published false words, which disparaged plaintiff's property causing the plaintiff to suffer special damages." <u>Warren v. Bank of Marion</u>, 618 F. Supp. 317, 320 (W.D. Va. 1985). As happens with foreclosures, a Trustees' Deed went to record indicating / stating there was a default and failure to cure. Defendants knew or had reason to know that the Neils were not in default, yet published material related to default and foreclosed upon the home, recording /publishing foreclosure documents, such as the Trustee's Deed. Wells Fargo knew that in the absence of default it had no valid interest in the Property and/or it acted with reckless disregard for the rights and interests of the Neils. See <u>In re Quinn</u>, 4 F.3d 986 (4th Cir., 1993)("The malice required to prove slander of title is common law malice, i.e., whether the [defendants] knew that their statements were false or acted in reckless disregard of the truth or falsity of their claim. See, e.g., Restatement (Second) Torts Sec. 623A(b)"). Wells Fargo also was reporting to credit bureaus that the Neils were delinquent when the Neils' home was sold at foreclosure. (J.A. at 14 -- Am. Compl. ¶34). *See* <u>In re Quinn</u>, 4 F.3d 986 (4th Cir., 1993)(plaintiff must prove unjustified). The Trustee's Deed and all recordings related to the foreclosure were disparaging to Plaintiff's title and were unjustified according to the terms of the contract. (J.A. at Am. Compl. ¶101). The publications were the actual and proximate cause of actual damages suffered by the Neils in loss or threat

27

of loss to property rights, expenses incurred through litigation, destroyed credit scores and credit history, increased interest rates, denied credit applications etc., and of damages arising from lost opportunities for credit (foreclosure remains on one's credit for many years). These damages continue to accrue, as long as the documents remain in the land records unreleased. (J.A. at Am. Compl. ¶103).  The Neils sufficiently stated a cause of action for slander title.

### III.    Abuse of Process – Issue #3

"To sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." Donohoe Const. Co., Inc. v. Mount Vernon Associates, 369 S.E.2d 857, 235 Va. 531 (Va., 1988) (citing Mullins v. Sanders, 189 Va. 624, 633, 54 S.E.2d 116, 121 (1949); Glidewell v. Murray-Lacy, 124 Va. 563, 570, 98 S.E. 665, 668 (1919)).

The lower court erred in dismissing the Neils' claim for Abuse of Process (Count III) on the basis that "Plaintiffs were merely asked to make payments under the original terms of their loan." (J.A. at 165 - Mem. Op. at pg. 4).  As servicer, Wells Fargo entered into the TPP contract with the Neils, despite the fact that it did not have authority to do such and knew that its principal would not modify the loan. Wells Fargo then breached that contract by misapplying all payments it accepted thereunder, thereby erroneously throwing Plaintiffs into default;

erroneously reported the Loan as delinquent; ruined Plaintiffs' near perfect credit score and effectively disqualified Plaintiffs for refinancing. (J.A. at 10 - Am. Compl. ¶58; *supra* at "Statement of Facts" and "Breach of Contract"). Wells Fargo did those things to ensure the Neils had no other recourse – no chance to refinance or take other actions to lower their payments on the mortgage. (J.A. at 20 - Am. Compl. ¶63). Wells Fargo then added charges, fees and inappropriately demanded from the Neils a lump sum of money in order to bring the Loan current under inappropriate terms that were in breach of the contract. (*supra* at "Breach of Contract"). Next, Wells Fargo misused and/or abused the non-judicial foreclosure process by recording documents among the land records and scheduling six foreclosure sales against the Neils' Property for 10/11/2012, 3/22/12, 04/26/12, 5/31/12, 08/30/12 and 03/07/13 (collectively the "Foreclosure Sales"), cancelling five of the six. (J.A. at 22 - Am. Compl. ¶72).

Foreclosure is an action to collect a debt. Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir., 2006)(court disagreed that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a debt). Recordation of documents among the land records is the means of "prosecuting the proceedings" in a nonjudicial jurisdiction, like Virginia. Wells Fargo misused/abused the process for an improper purpose, namely, as a whip to force the Plaintiff into accepting egregious terms on any amount purported

delinquent or due by Defendants and/or as a means of extortion to force the Neils to accept the terms dictated by Wells Fargo which was in breach of the TPP. (J.A. at 29 - Am. Compl. ¶105). *See* Mullins v. Sanders, 54 S.E.2d 116, 122 (Va. 1949)("a whip to force the payment of an alleged indebtedness" is an example of an abuse of process); Glidewell v. Murray-Lacy, 98 S.E. 665, 669 (Va. 1919)(using process as a means of extortion).

The Neils were asked to do more than make monthly payments under the terms of the original contract. They were asked to pay a large lump sum payment that was not justified. They were inappropriately asked to pay charges and fees and expenses related to the inappropriate default and six (6) scheduled foreclosures. (J.A. at 16, 21 and 27 - Am. Compl. ¶¶39, 64, 99). Further, asking Plaintiffs to merely make payments under the original terms of the Loan is in breach of the TPP contract entered into between the parties. (*see* J.A. at TPP).

The Neils' Abuse of Process claim was sufficient to survive a 12(b)(6) Motion to Dismiss.

**IV.    Remove Cloud on Title – Issue #4**

The lower court erred in dismissing the Neils' claim to Remove Cloud on Title (Count IV) on the basis that "Plaintiffs do not allege that they have satisfied the debt encumbering the Property." (J.A. at 166 - Mem. Op. at pg. 5). The debt no longer encumbers the Property, as the Property was sold at foreclosure. Plaintiffs

are seeking removal of the documents related to the foreclosure sale and the encumbrance be reattached to the Property, allowing the Neils to proceed under the true terms agreed upon by the Parties, as it is Defendants who have breached the terms contractually agreed upon. The Neils have plead that the conditions precedent in the deed of trust that must be met prior to foreclosure, were not satisfied--the sale was unfounded, as no default existed. Yet, Defendants sold their home at foreclosure and have recorded documents associated with said sale, such as the Trustee's Deed.

"It is well established in Virginia law that equity has inherent jurisdiction to quiet title to land and remove a cloud therefrom." Day v. Vaughn & Usilton, Inc., 193 Va. 168, 171, 67 S.E.2d 898, 901 (1951). The Virginia Supreme Court recognizes a "cloud" on title to be " . . . the semblance of a title, either legal or equitable, or a claim of interest in lands, appearing in some legal form, but which is in fact unfounded, or which it would be inequitable to enforce. Day at 172 (internal citations omitted). Whether a document is a "cloud" on title depends on whether it affects the marketability of said title. "Marketable title is one which . . . is dependent for its validity upon no doubtful questions of law or fact; one which will not expose the purchaser to the hazard of litigation." Presidential Gardens/Duke St. Ltd. Partnership v. Salisbury Slye, Ltd., 802 F.2d 106, 110 (4th Cir.1986)(emphasis added).  The legislature extended the right to remove a cloud

on one's title to those out of possession. *See* VA Code §55-153; that did not deprive those in possession of that same right.

A successful challenge to documents of record evidencing a foreclosure sale will result in the purchaser at said sale losing the title it thought it had. This is why, among other reasons, *caveat emptor* applies to purchaser at a foreclosure sale. Smith v. Woodward, 122 Va. 356, 94 S.E. 916 (1918); Federal Land Bank v. Parks, 170 Va. 240, 196 S.E. 627 (1938); Feldman v. Rucker, 201 Va. 11, 109 S.E.2d 379 (1959). The Neils have plead superior title *to the purchaser* at the foreclosure sale, as no default existed and the sale was unfounded – the remedy of foreclosure did not yet accrue as conditions precedent were not met.

## CONCLUSION

Plaintiffs respectfully request that this Court find the Court erred in dismissing the Amended Complaint, and remand this case to the lower Court so the claims may be heard.

## REQUEST FOR ORAL ARGUMENT

Jay Neil and Erika K. Neil respectfully request Oral Argument and believe that such will assist this Court in its consideration of these issues.

**CERTIFICATE OF COMPLIANCE**

1.  This brief complies with the type-volume limitation of Fed. R. App. P.28.1 (e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains  7,824 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2007* in *14pt Times New Roman*; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: January 6, 2014         /s/_____

                               *Jessica M. Carter, Esq. VSB#81952*
                               *Counsel for Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of January, 2013, I electronically filed Appellants' Initial Brief using the Court's CM/ECF system, which served electronic copies of the Brief on counsel of record who have consented to electronic service.


_____/s_____


Jessica M. Carter, Esq. VSB#81952
Brown, Brown & Brown, P.C.
6269 Franconia Road Alexandria,
VA 22310 703.924.0223
Fax 703.924.1586
brownfirm@lawyer.com