RECORD NUMBER: 13-2390

# United States Court of Appeals
### *for the*
# Fourth Circuit

**JAY NEIL and ERIKA K. NEIL,**

*Appellants,*

– v. –

**WELLS FARGO BANK, N.A., d/b/a Wells Fargo Home Mortgage; BWW-LAW GROUP, LLC; EQUITY TRUSTEES, LLC; and BANC OF AMERICA FUNDING CORP., 2005-4 TRUST,**

*Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

# BRIEF OF APPELLEES

**AMY S. OWEN
JOHN D.V. FERMAN
NICHOLAS V. CUMINGS**
BRIGLIAHUNDLEY, PC
**3975 University Drive, Suite 100
Fairfax, Virginia 22030
(703) 883-9101**

*Counsel for Appellees BWW Law
Group, LLC and Wells Fargo Bank,
N.A.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

BWW Law Group, LLC is not a publicly traded entity nor is 10% or more of its shares held by a publicly held corporation or other publicly held entity.

Wells Fargo Bank, N.A. is a subsidiary of Wells Fargo & Company ("WFC").  WFC is a publicly traded entity.  There are no other parents, trusts, subsidiaries and/or affiliates of Wells Fargo Bank, N.A. that have issued shares or debt securities to the public.

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................. i

Table of Contents ................................................................................ ii

Table of Authorities .......................................................................... iv

Statement of the Issues Presented for Review ........................................ 1

Statement of the Case......................................................................... 2

    A. Facts Alleged in the Amended Complaint...................................... 1

    B. Procedural Background ................................................................ 9

Summary of the Argument.................................................................. 10

Standard of Review ............................................................................ 12

Argument........................................................................................... 13

    A. The district court properly dismissed the breach of contract claim ............ 13

        1. The Neils were in default and did not bring the loan current.................. 14
        2. The TPP was not supported by consideration ........................................ 17
        3. The TPP did not guarantee a permanent loan modification .................... 21
        4. The TPP was not executed by Wells Fargo............................................ 25
        5. Any TPP contract claim is barred by the applicable three-year
           statute of limitations ................................................................ 27

    B. Count II does not state a claim for slander of title ....................... 29

    C. Count III does not state a claim for abuse of process................... 31

    D. No claim for quiet title exists ................................................... 34

Conclusion ......................................................................................... 36

Statement Regarding Oral Argument ..................................................................... 37

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Samuel I. White, P.C.*,
2011 U.S. Dist. LEXIS 98590 (E.D. Va. Aug. 31, 2011) ........................... 32

*Allison v. Shapiro & Burson, LLP*,
No. 1:09CV00057, 2009 WL 4015410  (W.D. Va. Nov. 19, 2009) ........... 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................. 32

*Bagley v. Wells Fargo Bank, N.A.*,
No. 3:12–CV–617, 2013 WL 350527 (E.D. Va. Jan. 29, 2013) ................. 36

*Banaga v. Taylor Bean Mortg.*,
2011 WL 5056985 (N.D. Cal. Oct. 24, 2011) ........................................... 20

*Barinaga v. JP Morgan Chase & Co.*,
2010 U.S. Dist. LEXIS 114245 (D. Ore. Oct. 26, 2010)............................. 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................. 12, 32

*Blick v. Wells Fargo Bank, N.A.*,
No. 3:11–cv–00081, 2012 WL 1030137 (W.D. Va. Mar. 27, 2012),
*aff'd*, 474 F. App'x 932 (4th Cir. 2012) ...................................................... 36

*Blum v. Bacon*,
457 U.S. 132 (1982).................................................................................. 12

*Bourdelais v. JPMorgan Chase Bank, N.A.*, ,
3:10-CV-670-HEH, 2011 WL 1306311 (E.D. Va. Apr. 1, 2011)............... 24

*Cherokee Corp. v. Chicago Title Ins. Corp.*,
35 Va. Cir. 19 (1994)................................................................................ 30

iv

*CitiMortgage, Inc. v. Crawford*,
    934 F. Supp. 2d 942 (S.D. Ohio 2013) ........................................................ 20

*Condel v. Bank of Am., N.A.*,
    3:12CV212-HEH, 2012 WL 2673167 (E.D. Va. July 5, 2012) .................. 23

*Corvello v. Wells Fargo Bank, N.A.*,
    728 F.3d 878 (9th Cir. 2013) ......................................................... 13, 20, 26

*Day v. Vaughn & Usilton*,
    193 Va. 168 (1951) ..................................................................................... 35

*Donohoe Constr. v. Mount Vernon Assoc.*,
    235 Va. 531, 369 S.E.2d 857 (1988) .................................................... 33, 34

*Estrella v. Wells Fargo Bank, N.A.*,
    No. 2:11cv414, 2011 WL 6825619 (E.D. Va. Dec. 28, 2011),
    *aff'd,* 497 Fed.Appx. 361 (4th Cir. 2012) ................................................... 36

*Everett v. Pitt Cnty. Bd. of Educ.*,
    678 F.3d 281 (4th Cir.2012) ....................................................................... 12

*Gallant v. Deutsche Bank Nat'l Trust Co.*,
    766 F. Supp. 2d 714 (W.D. Va. 2011) ........................................................ 36

*Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*,
    283 Va. 456, 723 S.E.2d 383 (2012) .................................................... 27, 28

*Glidewell v. Murray-Lacy*,
    124 Va. 563, 98 S.E. 665 (1919) ........................................................... 33, 34

*Golding v. Floyd*,
    261 Va. 190, 539 S.E.2d 735 (2001) .......................................................... 25

*Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*,
    1:08CV971GBL, 2009 WL 3175999 (E.D. Va. Sept. 30, 2009) ................ 27

*Jimenez v. Citibank, N.A.*,
    Record No. 101956, slip op. at 7 (Va. Supreme Ct. Dec. 16, 2011) ........... 35

*Kichatov v. Nationstar Mortgage, Inc.*,
2013 U.S. Dist. LEXIS 83997 (D. Ore. June 14, 2013) .............................. 19

*Koz v. Wells Fargo Home Mortg.*,
83 Va. Cir. 96 (2011) .................................................................................. 31

*Lodal v. Verizon Va., Inc.*,
74 Va. Cir. 110, 2007 WL 1360893 (Va. Cir. Ct. 2007) ...................... 29, 31

*Lomah Elec. Targetry, Inc. v. ATA Training Aids Australian Party Ltd.*,
828 F.2d 1021 (4th Cir. 1987) ..................................................................... 29

*Mabutol v. Fed. Home Loan Mortg. Corp.*,
No. 2:12cv406, 2013 WL 1287709 (E.D. Va. Mar. 25, 2013).................... 35

*Maine v. Adams*,
277 Va. 230, 672 S.E.2d 862 (2009) ........................................................... 35

*Mcinnis v. BAC Home Loan Servicing, LP*,
2:11CV468, 2012 WL 383590 (E.D. Va. Jan. 13, 2012),
*report and recommendation adopted*, 2:11CV468,
2012 WL 368282 (E.D. Va. Feb. 3, 2012) ................................................... 24

*Mehta v. Wells Fargo*,
737 F.Supp.2d 1185 (S.D. Cal. 2010) .......................................................... 20

*Montgomery v. McDaniel*,
628 S.E.2d 529 (2006) ................................................................................. 31

*Mullins v. Sanders*,
189 Va. 624, 54 S.E.2d 116 (1949) ............................................................. 33

*Nash v. Green Tree Servicing, LLC*,
943 F. Supp. 2d 640 (E.D. Va. 2013) .......................................................... 23

*Neff v. Ryman*,
100 Va. 521, 42 S.E. 314 (1902) ................................................................. 35

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ....................................................................... 32

*Papasan v. Allain*,
    478 U.S. 265 (1986)....................................................................... 32

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ...................................................... 12

*Pennington v. HSBC Bank, U.S.A., N.A.*,
    493 Fed. Appx. 548, 556 (5th Cir. 2012),
    *cert. denied*, 133 S. Ct. 1272, 185 L. Ed. 2d 185 (2013)....................... *passim*

*Preston v. Land*,
    220 Va. 118, 255 S.E.2d 509 (1979) ........................................... 30

*Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*,
    2011 U.S. Dist. LEXIS 130335 (W.D. Va. Nov. 10, 2011) ........................ 35

*Rackley v. JPMorgan Chase*,
    2011 WL 2971357 (W.D. Tex. July 21, 2011)............................................ 20

*Raytheon Technical Servs. Co. v. Hyland*,
    273 Va. 292, 641 S.E.2d 84 (2007) ............................................. 30

*Reitz v. Nationstar Mortgage, LLC*,
    4:12CV117SNLJ, 2013 WL 3282875 (E.D. Mo. June 27, 2013) .......... 19, 20

*Robinson v. Wix Filtration Corp. LLC*,
    599 F.3d 403 (4th Cir. 2010) ...................................................... 12

*Ross v. Peck Iron & Metal Co.*,
    264 F.2d 262 (4th Cir. 1959) ............................................... 32, 33, 34

*Sager v. Basham*,
    241 Va. 227, 401 S.E.2d 76 (1991) ............................................. 21

*Senter v. JPMorgan Chase Bank, N.A.*,
    810 F. Supp.2d 1339 (S.D.Fla.2011)....................................... 19, 20

*Seward v. New York Life Ins. Co.*,
    154 Va. 154, 152 S.E. 346 (1930) .............................................. 18

*Sherman v. Litton Loan Servicing, L.P.*,
796 F. Supp. 2d 753 (E.D. Va. 2011) ...................................................... 21, 24

*Smith v. Phillips*,
77 Va. 548 (1883) ........................................................................................ 18

*Spaulding v. Wells Fargo Bank, N.A.*,
714 F.3d 769 (4th Cir. 2013) .................................................... 12, 13, 23, 24

*Tapia v. United States Bank, N.A.*,
718 F. Supp. 2d 689 (E.D. Va. 2010),
*aff'd*, 441 F.App'x 166 (4th Cir. 2011) ...................................................... 36

*Townsend v. Fannie Mae*,
923 F.Supp. 2d 828 (W.D. Va. 2013) .......................................................... 36

*Triangle Auto Auction, Inc. v. Cash*,
238 Va. 183, 380 S.E.2d 649 (1989) ........................................................... 33

*Ubl v. Kachouroff*,
937 F. Supp. 2d 765 (E.D. Va. 2013) .......................................................... 34

*Vuyyuru v. Jadhav*,
3:10-CV-173, 2011 WL 1483725 (E.D. Va. Apr. 19, 2011),
*aff'd*, 501 F. App'x 294 (4th Cir. 2012) ...................................................... 34

*W.J. Schafer Assocs. v. Cordant, Inc.*,
254 Va. 514, 493 S.E.2d 512 (1997) ........................................................... 27

*Warren v. Bank of Marion*,
618 F. Supp. 317 (W.D. Va. 1985) ............................................................. 30

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ............................................................... *passim*

*Wright v. Castles*,
232 Va. 218, 349 S.E.2d 125 (1986) ........................................................... 30

*Zeller v. Aurora Loan Servs.*,
2011 Va. Cir. LEXIS 210 (Mar. 9, 2011) ............................................... 19, 20

viii

**Rules and Statutes**

Fed.R.Civ.P. 12(b)(6)............................................................... 12

Fed.R.Civ.P. 59(e).................................................................. 12

Va. Code. Ann. § 1-237 ............................................................ 34

Va. Code. Ann. § 8.01-114 ........................................................ 34

Va. Code. Ann. § 8.01-119 ........................................................ 34

Va. Code. Ann. § 8.01-146 ........................................................ 34

Va. Code. Ann. § 8.01-246(4)..................................................... 28

Va. Code. Ann. § 8.01-292 ........................................................ 34

**Other Authorities**

John L. Costello, VIRGINIA REMEDIES § 20.07 at 20-38, 20-39 (3d ed. 2005)....... 35

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW[1]

1.    Whether the district court properly dismissed the Neils' breach of contract claim under Virginia law which was based on a theory that they were entitled to a permanent mortgage loan modification under the Home Affordable Modification Program ("HAMP") by signing a proposed Trial Period Plan ("TPP") and made payments consistent with the TPP prior to a determination that they did not qualify for HAMP.

2.    Whether the district court properly dismissed the Neils' slander of title claim based on a Trustee's Deed where they concede they were not current on the Note and where they made no allegations of actual malice or special damages.

3.    Whether the district court properly dismissed the Neils' abuse of process claim based on Wells Fargo's use of the non-judicial foreclosure the Neils consented to in the Note and Deed of Trust.

4.    Whether a claim to Remove Cloud on Title exists when the Neils do not allege they satisfied the Note secured by the Deed of Trust.

---

[1] Appellees do not dispute this Court's jurisdiction to hear this appeal, and therefore do not submit the optional jurisdictional statement.

1

## STATEMENT OF THE CASE

This case involves the borrowers' attempt to obtain a permanent modification of their loan even though they could not meet their obligations under the Note and did not qualify for a modification under HAMP. Any suggestion that the lower court had a "certain preconceived, unconscious notion", on available causes of action, is misplaced. Opening Brief at 3. The district court's rulings dismissing the claims and denying the motion for reconsideration were well founded in applicable law and the express language of the documents at issue.

### A.    Facts Alleged in the Amended Complaint[2]

On June 17, 2005, Appellants Jay and Erika Neil borrowed $604,000, evidenced by a Note and secured by a Deed of Trust, to purchase property located at 15284 Surrey House Way, Centreville, Virginia ("Property"). J.A. 10-11 (Am. Compl. ¶¶ 3-4); 39-75 (Am. Compl. Ex's. A, B). Appellee Wells Fargo Bank, N.A. ("Wells Fargo") was the original lender and later became the servicer for the loan. *Id*.; J.A. 31 (Am. Compl. ¶ 114). Appellee Equity Trustees, LLC ("Equity") is alleged to be the substitute trustee, Appellee BWW-Law Group, LLC ("BWW") is alleged to have acted for the substitute trustee, and Appellee Banc of America

---

[2] On review of a Motion to Dismiss, factual allegations in the Amended Complaint must be taken as true unless contradicted by documents appended to or referenced in it or by matters of which the Court can take judicial notice. Appellees reserve the right to dispute the facts if this matter is remanded on any basis.

2

Funding Corp., 2005-2 Trust ("BOAFC") is alleged to be the investor and note holder of the loan.  J.A. 21 (Am. Compl. ¶¶ 65, 66).

The Neils were obligated to repay the loan at a rate of $3,476.97 monthly for thirty years, and to pay an additional $467.71 per month into escrow.  J.A. 11 (Am. Compl. ¶¶ 6-7).  On or around April of 2009, the Neils applied for a loan modification.  J.A. 11-12 (Am. Compl. ¶¶11-12).  On June 24, 2009, the application was denied.  J.A. 12 (Am. Compl. ¶13).  The Neils then "discontinued their efforts for . . . loan modification and continued to make their timely Monthly Payments on the subject [l]oan – something they were able and ready to do, and in fact continued to do."  *Id.* (Am. Compl. ¶ 13).

Around October 9, 2009, the Neils received several documents from Wells Fargo.  J.A. 12 (Am. Compl. ¶14); J.A. 77-86 (Am. Compl. Ex. C).  Their Amended Complaint defines, refers to, and cites to this set of documents collectively as "the 'TPP Agreement' or the 'TPP'".  *E.g.*, J.A. 12-22, 25-27, 29 (Am. Compl. ¶¶ 14, 19, 20, 29-32, 36, 38, 39, 41, 47-50, 55, 58, 59, 61, 63, 64, 70, 88, 90-97, 99, 105).   The "TPP" documents included the following:

- A letter that begins, "You ***may*** qualify for a Home Affordable Modification Trial Plan – a way to make your payment more affordable." J.A. 77-79 (the "TPP Letter")(emphasis added);

- A Frequently Asked Questions sheet ("FAQ's"). J.A. 80;

3

- A document titled "Home Affordable Modification Program Loan Trial Period," with places designated for execution signatures by Wells Fargo and the Neils.  J.A. 81-83;

- A page titled, "Important Information About Your Trial Period Plan," with payment coupons attached. J.A. 84-85; and

- A one-page letter regarding available free housing counseling services. J.A.86.

The TPP Letter makes clear that it is not a promise for a HAMP loan

modification, including the following provisions:

- "***If you qualify*** under the federal government's Home Affordable Modification [P]rogram and comply with the terms of the Trial Period Plan, we will modify your mortgage loan and you can avoid foreclosure." J.A. 77 (emphasis added)

- "The monthly trial period payments are . . . our estimate of what your payment will be ***IF we are able to modify*** your loan under the terms of the program."  J.A. 77 (underscores and emphasis added).

- "***If you do not qualify*** for a loan modification, we will work with you to explore other options . . . ." J.A. 77 (emphasis added).

- "To accept this offer, and ***see if you qualify*** for a Home Affordable Modification, send the 5 items below . . . ." J.A. 78 (emphasis added).

- "The Trial Period Plan is the first step.  ***Once we are able to confirm your income and eligibility for the program***, we will finalize your modified loan terms and send you a loan modification agreement ('Modification Agreement'), which will reflect the terms of your modified loan."  J.A. 79 (emphasis added).

The letter also warns the Neils of adverse effects on their credit status if they chose

to enter a trial period:

> ***During the trial period, we will report your loan as delinquent to the credit reporting agencies even if you make your trial period payments***

**_on time_." *J.A. 79 (emphasis added)*.**

The second document in the list, the FAQ's sheet, includes the question, "What do you do with my first trial period payment **_if I do not qualify_** for the program?" (emphasis added). Answer: "Your first trial payment will be applied to your existing loan in accordance with the terms of your loan documents. " J.A. 80.

The third document, the "Home Affordable Modification Program Loan Trial Period" required execution by both the Neils and Wells Fargo, and provides the following, in relevant part:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage . . . .

> I understand that after I sign and return two copies of this Plan to the Lender**_, the Lender will send me a signed copy of this Plan If I qualify for the Offer_** or will send me written notice that I do not qualify for the Offer. ***This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature …*** (emphasis added.)

**1. My Representations.** I certify, represent to Lender and agree:

> A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) ***I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future***; . . . [and] . . . (emphasis added)

5

**2. The Loan Trial Period.**

. . . During the period 11/1/2009-1/1/2010 commencing on 11/1/2009 and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due 2/1/2010 or (ii) termination of this Plan, I understand and acknowledge that: . . .

    E.   *When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents*;

    F.   *If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement . . . the Loan Documents will not be modified and this Plan will terminate*. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

    G.  *I understand that the Plan is not a modification of the Loan Documents* and that the Loan Documents will not be modified unless and until (i) *I meet all of the conditions required for modification*, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. …

**4. Additional Agreements**.  I agree to the following: . . .

    D.  That all terms and provisions of the Loan Documents remain in full force and effect; *nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents*. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents. (Emphasis added).

J.A. 81-83.

On or about November 1, 2009, the Neils signed two copies of the "Home Affordable Modification Program Loan Trial Period" and paid a first payment amount of $2,655.77.  J.A. 14 (Am. Compl. ¶ 23); J.A. 82.  They made two additional, identical payments.  On or about January 1, 2010, when the third payment would be due according to the document, they requested a permanent loan modification.  J.A. 14 (Am. Compl. ¶¶ 26, 27).  The Neils allege they were told that Wells Fargo was "backed up" and "their permanent loan modification had not been processed yet, but that [they] inevitably would receive a permanent loan modification if they continued to make timely payments."  *Id.* (¶28).  The Neils allege that this "extension of the TPP was a violation of the express terms of the TPP," but that "[s]tarting on 2/1/2010," they nonetheless "began to make unauthorized 'extended' TPP Monthly Payments at the request of Wells Fargo" based on Wells Fargo's assurances.  J.A. 14, 16-17 (Am. Compl. ¶¶ 29, 39, 42).

The alleged oral extension of the TPP in January or February 2010 lasted for approximately seven months, during which period the Neils received two separate written notifications from Wells Fargo that "they were past due and that Wells Fargo was accelerating their loan."  *Id.* at 17 (¶¶ 43, 45).  When the Neils inquired, Wells Fargo representatives allegedly told them that they were "current" on the loan and to disregard the acceleration notices.  *Id.* at 17, 18 (¶¶44, 46).

7

Nonetheless, the Neils "began to become concerned that Wells Fargo did not intend on fulfilling the TPP Agreement". *Id.* at 17-18 (¶46).

On September 1, 2010, Wells Fargo informed the Neils that it had calculated the net present value ("NPV") of the proposed modification (as required under HAMP), that the NPV calculation is "required . . . to determine if the NPV is acceptable to the investor that owns your mortgage," and that "your mortgage cannot be modified based on your NPV calculation." J.A. 18 (Am. Compl. ¶ 50); J.A. 87-89.      As the Neils did not qualify for the modification, Wells Fargo did not provide them with an executed Home Affordable Modification Program Loan Trial Period document.  In March 2012, Wells Fargo informed the Neils that the investor would not offer "any type of loan modification or financial assistance." J.A. 20 (Am. Compl., ¶ 62).

The Amended Complaint does not allege that the Neils, after receiving the September 1, 2010 letter denying a HAMP loan modification or the March 2012 notification that no modification whatsoever was available, satisfied the outstanding past due amounts on their loan or that they began making full monthly payments in accordance with the Note.  Rather, while they received five separate loan acceleration notices between September 12, 2010 and March 27, 2011 indicating the loan was "delinquent," they at most only "continued to make to make TPP Monthly Payments."  J.A. 20, 21-22 (Am. Compl. ¶¶ 60, 68).

8

Between October 11, 2012 and March 13, 2013, six foreclosure sales were scheduled. J.A. 22 (Am. Compl. ¶ 72). Five were cancelled due to Wells Fargo's attempts to obtain other relief for the Neils. *Id.* The attempts proved unsuccessful, and on March 7, 2013 the Property was sold at foreclosure. J.A. 19, 22 (Am. Compl. ¶¶ 56, 72). A Trustee's Deed was then recorded among the Fairfax County land records. J.A. 25 (Am. Compl. ¶ 86).

## B.     **Procedural Background**

The Neils filed a Complaint in the Circuit Court of Fairfax County, Virginia, which was served on Wells Fargo on May 13, 2013. *See* ECF Dkt. No. 1-1. Wells Fargo timely removed the matter to the United States District Court for the Eastern District of Virginia, Alexandria Division. *See* ECF Dkt. No. 1. On June 4, 2013, BWW and Wells Fargo filed a motion to dismiss, and the Neils responded by filing an Amended Complaint adding, inter alia, Equity Trustees, LLC and Banc of America Funding Corp., 2005-4 as additional defendants. *See* ECF Dkt. Nos. 3-5, 10. BWW and Wells Fargo moved to dismiss the Amended Complaint. See ECF Dkt. Nos. 12-14, 16, 19, 22. Equity Trustees, LLC and Banc of America Funding Corp., 2005-4 Trust, were never served with the Amended Complaint and should not be identified as Appellees.

Judge Hilton of the district court granted Wells Fargo's motion to dismiss. *See* ECF Dkt. Nos. 23, 24. The Neils filed a motion for reconsideration, which

was fully briefed and then denied on October 25, 2013. *See* ECF Dkt. Nos. 25-29. On November 12, 2013, the Neils filed a Notice of Appeal with respect to the original dismissal and the denial of the motion for reconsideration. *See* ECF Dkt. No. 30.

On appeal, the Neils challenge only the dismissal of Counts I through IV of their Amended Complaint. *See* Appellants' Brief at 2, 3-4 n.1. Those counts are based on theories of recovery for breach of contract (Count I), slander of title (Count II), abuse of process (Count III), and "remove cloud on title" (Count IV).

## SUMMARY OF THE ARGUMENT

The district court properly dismissed the Amended Complaint premised on an agreement to a permanent loan modification. The district court correctly dismissed Count I, Breach of Contract, on the alternative rationales that the Neils "have no contractual right to a loan modification" and that the TPP "is not supported by consideration and does not constitute an enforceable contract." J.A. 164-65 [ECF Dkt. No. 23 at 3-4]. Virginia legal authority and persuasive precedents from both within and outside this Circuit mandate these conclusions. The express language of what the Neils characterize as "the TPP" further supports the conclusion that there was no enforceable contract. Even if the TPP could constitute a contract, it was not breached and could not be enforced to give the

10

Neils a loan modification. Finally, the breach of contract claim can be dismissed on alternative grounds based on the applicable statute of limitations.

The Neils' slander of title claim, Count II, was based solely on the recordation of a Trustee's Deed. The district court properly dismissed this claim because the Neils had "fail[ed] to allege slanderous or false words and concede[d] that they were not current on the Note at the time of the foreclosure sale." J.A. 165 [ECF Dkt. No. 23 at 4]. Moreover, the only reasonable inference to be drawn from the Amended Complaint is that the Neils were not current on the loan when the foreclosure sale occurred. Therefore, the foreclosure was permitted and the Trustee's Deed was properly recorded. The slander of title claim further fails to allege actual malice or special damages, required elements of the claim.

The district court properly dismissed the abuse of process claim, Count III, because the Neils "were merely asked to make payments under the original terms of their loan." J.A. 165-66 [ECF Dkt. No. 23 at 4-5]. The Amended Complaint fails to allege any legally cognizable "ulterior purpose" to the foreclosure proceedings. The abuse of process claim must also fail as a matter of law because a non-judicial foreclosure does not constitute "process".

Finally, the district court correctly concluded that the Neils had not stated a claim for "Remove Cloud on Title", a claim to quiet title, because they "do not allege that they have satisfied the debt encumbering the property." J.A. 166 [ECF

11

Dkt. No. 23 at 5]. Since they did not and cannot allege they owned the property free and clear of encumbrances, the court properly followed identical holdings in other district court cases that have been affirmed in this circuit.

## STANDARD OF REVIEW

This Court recently summarized the standard of review for a Motion to Dismiss as follows:

> We review a district court's grant of a motion to dismiss *de novo,* focusing only on the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir.2008). We "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

*Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769, 776 (4th Cir. 2013).

On appeal, a Rule 12(b)(6) dismissal may be affirmed "on any ground that would support the judgment in favor of the party prevailing below." *Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013) (citing *Everett v. Pitt Cnty. Bd. of Educ.,* 678 F.3d 281, 291 (4th Cir.2012); *see also Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982).

The denial of a Rule 59(e) motion is reviewed "under the deferential abuse of discretion standard." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010) (internal citation omitted).

# ARGUMENT

## A.  The district court properly dismissed the breach of contract claim.

The Neils' breach of contract claim is based on two theories:  first, that they were entitled to a HAMP loan modification by signing the "Home Affordable Modification Program Loan Trial Period" and remitting reduced payments in the amounts indicated in that document; and second, that they were not in default when they did not pay the amounts due under the Note after the HAMP loan modification was denied.  These theories are flawed under applicable law and the documents at issue. The Neils were never guaranteed a loan modification and they clearly were in default when the foreclosure occurred.  The Neils' heavy reliance on two cases from the Seventh and Ninth Circuit to support their argument that the TPP is an enforceable contract is also misplaced.  *See* Appellants' Br. at 3, 12, 14, 17, 24 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012); *Corvello v. Wells Fargo Bank, N.A.*, [728 F.3d 878 (9th Cir. 2013)]).  The facts and applicable law do not support the finding by those courts; this matter has been properly reviewed by numerous district courts in this circuit.  The court should look to its opinion in *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013) (TPP "falls short of the definiteness required to make a contract") and to *Pennington v. HSBC Bank, U.S.A., N.A.,* 493 Fed. Appx. 548, 556 (5th Cir. 2012);

*cert. denied*, 133 S. Ct. 1272, 185 L. Ed. 2d 185 (2013) if it seeks guidance from another circuit.

>    1.    ***The Neils were in default and did not bring the loan current.***

The Neils assert inconsistent and alternate positions regarding default depending on the counts alleged: either they were not in default on their mortgage at the time the foreclosure occurred,[3] which would be required to avoid dismissal of Counts II through IV, or, if they were in default, it was solely due to Wells Fargo's breach of contract (Count I).  *See* Appellants' Br. at 2, 3, 11-12, 14, 19, 20, 26, 27, 28-29, 31, 32.  The latter position – that Wells Fargo caused a default – is the one taken in support of their breach of contract theory in Count I.

The Neils argue that Wells Fargo "create[d] a default" by "immediately … labeling the Neils as delinquent," "demanding immediately due the difference between the TPP payments and the regular loan payments," and "improper[ly] treating and allocat[ing]  [and thereby] misapplying all payments it accepted [under the TPP]."  Appellants' Br. at 14, 19, 20, 28-29.  However, the Amended

---

[3] *See* Appellants' Br. at 26 ("The Neils having pled that the foreclosure occurred in the absence of default, a claim for slander of title based upon the foreclosure was properly pled ."); 27 (" ... [A] Trustees' Deed went to record indicating / stating there was a default and failure to cure.  Defendants knew or had reason to know that the Neils were not in default…" ); 31("The Neils have plead [sic] …--the sale was unfounded, as no default existed."); 32 ("The Neils have plead [sic] superior title to the purchaser at the foreclosure sale, as no default existed and the sale was unfounded  . . . ." ).

Complaint and its attachments establish that even if the TPP were a contract, Wells Fargo met the terms of the contract by properly accounting for the loan payments, properly reporting the Neils as delinquent on the loan during the trial period, and properly demanding delinquent amounts after the Neils failed to qualify for a loan modification.

The document relied upon by the Neils for the breach of contract claim, entitled Home Affordable Modification Program Loan Trial Period, permits Wells Fargo to take the very actions that are now alleged to have "created the default." For example, Wells Fargo was entitled to seek the full balance of the difference between the reduced payments and normal payments on demand when the trial period terminated.

> "if the lender does not provide me a fully executed copy of this plan and the Modification Agreement … the Lender will have all of the rights and remedies provided by the Loan Documents and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and not be refunded to me." J.A. 82, § 2.F.

> When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the loan documents unless such payments are sufficient to completely cure my entire default under the Loan Documents." *Id.*, § 2.E.

It also describes the method of applying payments received during the trial period: keeping them "in a non-Interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full." *Id.*, §

15

2.D.  In addition, the Neils were informed that their loan would immediately be reported "as delinquent to the credit reporting agencies even if you make your trial period payments on time."  J.A. 79.

Thus, immediately upon making the first reduced payment in lieu of a full payment under the Loan Documents, the Neils voluntarily became delinquent on the loan – an event that they had represented under oath they believed would occur.[4]  By their own admission, they could not afford to make their regular mortgage payments, and *ergo* would be in default on the mortgage absent modification or other relief.  *See Pennington v. HSBC Bank, U.S.A., N.A.,* 493 Fed. Appx. 548, 556 (5th Cir. 2012); *cert. denied*, 133 S. Ct. 1272, 185 L. Ed. 2d 185 (2013).  Alternatively, if the Neils now suggest that they would not have defaulted but for their participation in the trial period plan, they admit that they did not qualify for HAMP and misrepresented their financial status. *See id.* at 553.

The Neils were informed that their application for a modification was denied due to the loan investor's unwillingness to accept the NPV.  J.A. 88.  While the Neils allege that they were current on their mortgage payments when they signed the Home Affordable Modification Program Loan Trial Period, they make no allegations that during the two-year period after the denial, they were able to

---

[4] They represented under penalty of perjury that they "[could] not afford [their] … mortgage payment," and that they were "either in default or believe [they] will be in default … in the near future, and  … do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future."  J.A. 81.

make their regular mortgage payments or otherwise were not in default under the terms of the loan documents.  The Neils concede that they were unable to pay the difference between the reduced payments and their normal payments to bring their loan current.  Any alleged erroneous denial of a HAMP permanent modification in 2010 cannot excuse their failure to make their regular mortgage payments in the intervening two years before the 2013 foreclosure sale.  Accordingly, Wells Fargo had all the rights and remedies under the Note and Deed of Trust and applied the partial payments made during the trial period to the full amounts owed on the loan.  Thus, the default that existed at the time of foreclosure was caused by the Neils' inability to make payments required under the Note.[5]

### 2.     *The TPP was not supported by consideration*.

The district court correctly concluded that the TPP was not supported by consideration and therefore does not constitute an enforceable contract, as "the TPP merely required [the Neils] to remit mortgage payments – something they were already required to do." J.A. 164-65 [ECF Dkt. No. 23 at 3-4].

The Loan Trial Period clearly states, "all terms and provisions of the Loan Documents remain in full force and effect …" but for the fact that the lender

---

[5] The Neils do not allege that they took any action to seek reconsideration of the 2010 HAMP denial.  The September 3, 2010 letter clearly states that the Neils could challenge the NPV calculation that resulted in their HAMP ineligibility within thirty calendar days of the date of the letter.  J.A. 88-89.

accepts reduced monthly payments (which are held until sufficient money accrues to make a full monthly payment under the Note).  J.A. 82, 83, ¶¶ 2.D, 4.D.  The Neils argue that they "undertook multiple obligations above and beyond [their] existing legal duty to make mortgage payments," such as "provide documentation of their current income, make legal representations about their personal circumstances, . . . agree to undergo credit counseling if requested, [and] . . . could also be required to make payments into a newly established escrow account." Appellants' Br. at 17 (internal quotations and citations omitted).  When making this argument, the Neils quote case law, not the TPP or their Amended Complaint. The Amended Complaint, in fact, alleges that the only thing the Neils were asked to do upon signing the document was what they were already obligated to do, namely remit mortgage payments.  Indeed, the payments under the TPP were lower than those due under the subject Note.  J.A. 13-14 (Am. Compl. ¶¶ 19-22).

"It is impossible to say there is a valuable consideration where the debtor does no more than the law compels him to do, and the creditor receives no more than he is entitled to receive."  *Smith v. Phillips*, 77 Va. 548, 551 (1883) (emphasis in original).  In other words, "a new promise, without other consideration than the performance of an existing contract in accordance with its terms, is a naked promise without legal consideration therefor and unenforceable."  *Seward v. New York Life Ins. Co.*, 154 Va. 154, 168, 152 S.E. 346, 350 (1930);  *see also*, *e.g.*,

18

*Reitz v. Nationstar Mortgage, LLC,* 4:12CV117SNLJ, 2013 WL 3282875, at *10-14 (E.D. Mo. June 27, 2013) (additional TPP "requirements" did not constitute consideration); *Kichatov v. Nationstar Mortgage, Inc*., 2013 U.S. Dist. LEXIS 83997 at *24-25 (D. Ore. June 14, 2013); *Senter v. JPMorgan Chase Bank, N.A.,* 810 F. Supp.2d 1339, 1346–49 (S.D.Fla.2011); *Barinaga v. JP Morgan Chase & Co.¸* 2010 U.S. Dist. LEXIS 114245 at *5-9 (D. Ore. Oct. 26, 2010) (payment of a portion of what the debtor was legally obligated to pay under a loan is not adequate consideration for an alleged agreement to permanently modify the terms of the loan."); *Zeller v. Aurora Loan Servs.*, 2011 Va. Cir. LEXIS 210 (Mar. 9, 2011) (holding that a TPP does not constitute a new promise because by its own terms it is not a modification agreement").   In these circumstances, the TPP did not constitute a valid and enforceable contract because of the lack of consideration.

The Appellants' Brief notes the Seventh Circuit has held, under Illinois law, that a similar (perhaps identical) TPP contained sufficient consideration.  *See* Appellants' Br. at 17 (quoting *Wigod*, 673 F.3d at 564).  In *Wigod*, consideration was described as the borrower agreeing "to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information."  673 F.3d at 564.  Appellees respectfully submit that the *Pennington* ruling and others are more similar to the facts in this case and Virginia law. *Pennington,* 493 F. App'x at 552 (courts have found no consideration because all

the terms are either required by the initial loan (i.e. regular payments) or are best understood as conditions of applying for the HAMP program); *CitiMortgage, Inc. v. Crawford*, 934 F. Supp. 2d 942, 948-49 (S.D. Ohio 2013) ("If document submission were sufficient, 'each would-be barista not hired after filling out an application at Starbucks and handing it to a Starbucks employee' could claim consideration.") (quoting *Banaga v. Taylor Bean Mortg.*, 2011 WL 5056985, at *4 (N.D. Cal. Oct. 24, 2011)); *Reitz,* 2013 WL 3282875, at *12; *Senter*, 810 F. Supp.2d at 1348–49; *Rackley v. JPMorgan Chase,* 2011 WL 2971357, at *4 (W.D. Tex. July 21, 2011) (citing cases); *Mehta v. Wells Fargo,* 737 F.Supp.2d 1185, 1196–98 (S.D. Cal. 2010); *Zeller*, 2011 Va. Cir. LEXIS 210.[6]

The facts in *Wigod* are distinguishable from those alleged in the Amended Complaint. The Amended Complaint states that the Neils had submitted information before receiving the proposed TPP, that they were not obligated to provide the information again under the TPP, and that they were already obligated to make escrow payments under the Loan Documents. J.A. 11, 13 (Am. Compl. ¶¶ 7, 21-22). Even if submission of documentation could be deemed consideration in

---

[6] The Ninth Circuit has concluded, in part, that allowing Wells Fargo "to keep borrowers' trial payments without fulfilling any obligations in return" would be "an unfair result" and work an "injustice." *Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 884 (9th Cir. 2013). It is difficult to comprehend how the court concluded that allowing a lender to keep partial payments toward an existing debt is unfair.

the abstract, the Neils' submission of financial information and prior promise to make escrow payments would be "past consideration" and insufficient consideration for the TPP.  *See Sager v. Basham*, 241 Va. 227, 230, 401 S.E.2d 76, 677 (1991) ("When . . . a service has been rendered before a promise was made, the prior service is not a sufficient consideration to support the promise.") [7]

### 3.    *The TPP did not guarantee a permanent loan modification.*

Assuming *arguendo* that *Wigod*'s interpretation of consideration could apply here, the court must look at what Wells Fargo's obligations would have been. Even if promises in the TPP to open new escrow accounts, undergo credit counseling, and provide accurate information could be considered "consideration," it would be consideration only in exchange for the opportunity to participate in a TPP – not, as the *Wigod* Court held, for a permanent loan modification.  *See Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 762-63 (E.D. Va. 2011).

At its core, this case arises from the sole fact that the Neils did not receive a permanent modification under HAMP.  The Amended Complaint is peppered with allegations that Wells Fargo improperly denied permanent modification and that this constituted a breach of contract under the TPP.  J.A. 16, 17, 18, 19, 25, 27 (Am. Compl., ¶¶ 38, 41, 49, 51, 55, 89, 94-96).  Similarly, the Neils clearly state in

---

[7] As for credit counseling, the Neils have not alleged that they were actually required to undergo counseling or that they in fact ever did.

their Brief that, "The contractual language is explicit in stating Wells Fargo was required to extend a permanent modification to Plaintiffs." Appellants' Br. at 24.

However, an examination of the HAMP documents upon which the Neils rely reveals that no permanent modification was promised. The October 6, 2009 offer letter qualifies the following:

- "***If you qualify*** under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan …"
- TPP payments are an "estimate of what you payment will be ***IF we are able to modify your loan*** under the terms of the program." J.A. 77 (emphasis added).
- "***Once we are able to confirm your*** income and ***eligibility*** for the program, we will finalize your modified loan terms and send you a loan modification agreement …" J.A. 79 (emphasis added).

The "Frequently Asked Questions" section notes:

- "your modification will not be effective ***unless you meet all of the applicable conditions, including*** making all trial period payments." J.A. 80

The Loan Trial Period document that the Neils signed similarly does not guarantee modification:

- "confirmation of the reasons I cannot afford my mortgage payments" is required "to determine ***whether I qualify*** for the offer described in this Plan." J.A. 81.
- "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan ***If I qualify*** for the Offer or will send me written notice that I do not qualify for the Offer." *Id.*
- Paragraph 2(G) notes that "I understand that ***the Plan is not a modification of the Loan Documents*** and that the Loan Documents will not be modified ***unless*** and until (i) ***I meet all of the conditions for modification***, (ii) ***I***

22

> _**received a fully executed copy of a Modification Agreement**_, and (iii) the Modification Effective Date has passed." J.A. 82, ¶ 2(G).

- Similarly, it provides, "I further understand and agree that the _**Lender will not be obligated or bound**_ to make any modification of the Loan Documents _**if the Lender determines that I do not qualify**_ or if I fail to meet any one of the requirements under this Plan." _Id._ It also confirms that the Loan Documents "remain in full force and effect." J.A. 83, ¶ 4(D).

These numerous provisions make it clear that the TPP does not provide for a permanent modification just because a borrower may make TPP payments.[8]

The district court correctly concluded that no viable cause of action exists for breach of contract based on the denial of a permanent loan modification, as have numerous Virginia district courts in this Circuit in similar circumstances. _See_, _e.g._, _Nash v. Green Tree Servicing, LLC_, 943 F. Supp. 2d 640, 645 (E.D. Va. 2013) (although plaintiff could assert a breach of contract claim based on a TPP, she had "no cause of action for a breach when a servicer chooses to deny a permanent HAMP modification to an applicant"); _Condel v. Bank of Am., N.A._, 3:12CV212-HEH, 2012 WL 2673167 (E.D. Va. July 5, 2012) ("most courts have . . . concluded that a borrower cannot sue for breach-of-contract directly under his TPP agreement - for instance, where a servicer declines to grant a permanent loan modification at the conclusion of the trial period"); _Mcinnis v. BAC Home Loan_

---

[8] In _Wigod_ the Seventh Circuit held that although HAMP does not provide a private right of action, it also does not displace state law remedies. 673 F.3d at 581-85. This Court has indicated agreement with that proposition, but no state remedies are available on these facts. _See Spaulding v. Wells Fargo Bank, N.A._, 714 F.3d 769, 776 n.4 (4th Cir. 2013) (citing _Wigod_, 673 F.3d at 581.)

*Servicing, LP*, 2:11CV468, 2012 WL 383590 (E.D. Va. Jan. 13, 2012), *report and recommendation adopted*, 2:11CV468, 2012 WL 368282 (E.D. Va. Feb. 3, 2012) ("According to Plaintiff's own allegations, she did not receive a fully executed copy of the modification agreement, a condition necessary to modifying her original loan under the terms of the TPP Agreement."); *Sherman*, 796 F. Supp. 2d 753 (dismissing breach of contract claim based on "a mere offer to consider plaintiff's application"); *Bourdelais v. JPMorgan Chase Bank, N.A*., , 3:10-CV-670-HEH, 2011 WL 1306311, at *4-6 (E.D. Va. Apr. 1, 2011) (dismissing breach of contract claim based on a TPP where "Plaintiff has not alleged that she qualified for permanent modification, nor . . . that she received a fully executed copy of the Plan or Modification Agreement prior to the Modification Effective Date").

To the extent that the TPP in this case is construed as an enforceable contract requiring Wells Fargo to process a HAMP application and either provide a permanent modification or inform the Neils that they did not qualify, Wells Fargo did not breach the TPP. It processed the application and informed the Neils that they did not qualify under HAMP because of the NPV calculation. *See Spaulding*, 714 F.3d at 778 (affirming a dismissal of a breach of contract claim and holding that the district court correctly rejected "counterfactual mantra constituting at most unadorned legal conclusions" that "Wells Fargo was required to issue a HAMP modification to the homeowners"). As Wells Fargo met any contractual obligation

24

by reviewing the Neils' ability to qualify and forbearing on any foreclosure on the Property during its review, it did not breach the TPP.

### 4. *The TPP was not executed by Wells Fargo.*

In *Pennington*, the Fifth Circuit found a TPP not to be an enforceable contract and relied on the fact that "[t]he TPP expressly requires that before the contract is final, the lender must send a signed copy to the borrower," that "[t]he Penningtons never alleged that they received such a signed copy," and that "Texas courts give significant weight to express requirements that contracts be executed by the parties before they become binding." 493 F. App'x at 554 & n.9

Virginia law is also strict on execution of the contracts. *See Golding v. Floyd*, 261 Va. 190, 194, 539 S.E.2d 735, 738 (2001) ("The execution of a formal agreement . . . was a condition precedent to the existence of a binding contract. A formal contract was never executed; as a result, no contract exists."). And, as in *Pennington*, the Loan Trial Period here expressly states, "This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature." J.A. 81. These are "clear and unambiguous terms" and "a court is required to construe the terms according to their plain meaning." *Golding*, 261 Va. at 192, 539 S.E.2d at 736 (citations omitted). The Amended Complaint does not allege that the lender signed the document or that the Neils were provided a copy of the document with the lender's

signature, and no executed copy was appended to the Amended Complaint. This demonstrates that the TPP never took effect and that "there could be no contract . . . to breach." *Pennington*, 493 F. App'x at 554.

The two cases from the Seventh and Ninth Circuit that the Neils rely on to support their argument that the TPP is an enforceable contract are not helpful on this point. *See* Appellants' Br. at 3, 12, 14, 17, 24 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012); *Corvello v. Wells Fargo Bank, N.A.*, [728 F.3d 878 (9th Cir. 2013)]). In *Wigod*, "Wells Fargo countersigned [the TPP] on June 4, 2009 and mailed a copy to . . . [the borrower] with a letter congratulating her on her approval for a trial modification." 673 F.3d at 562. Thus, the enforceability of the TPP based on the lack of a signature by the lender was not raised or at issue in *Wigod*. While the Ninth Circuit in *Corvello* (applying California law) characterized *Wigod's* holding as "not turn[ing] on that fact [of non-execution], but instead on the bank's failure to tell the borrowers that they did not qualify," 728 F.3d at 884, it provided no analysis of what impact the absence of a signed TPP may have on the existence of an enforceable contract.

By seeking to treat as a contract a document that on its face states it "will not take effect unless and ***until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature***," the Neils in essence are trying to prosecute a promissory estoppel theory via a breach of contract claim.

26

Virginia does not recognize promissory estoppel as an affirmative cause of action. *See Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*, 1:08CV971GBL, 2009 WL 3175999 (E.D. Va. Sept. 30, 2009) (citing *W.J. Schafer Assocs. v. Cordant, Inc.*, 254 Va. 514, 493 S.E.2d 512, 516 (1997)).

### 5. *Any TPP contract claim is barred by the applicable three-year statute of limitations.*

As the TPP was not executed by both parties, even if the Neils successfully demonstrated the TPP was an enforceable contract, then it would be governed by the applicable three-year statute of limitations for oral contracts. *See Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*, 283 Va. 456, 458, 723 S.E.2d 383 (2012). In *Gerald T. Dixon*, the defendant sent a proposal it had signed to the plaintiff asking the plaintiff to countersign and stated that "an executed copy will serve as our [written] agreement." *Id.* The plaintiff did not sign, but both parties performed under the writing, and neither disputed that a contract existed. 283 Va. at 458-59, 723 S.E.2d at 383-84. The Virginia Supreme Court held that the writing, albeit a valid and enforceable contract, was not a contract "in writing" for statute-of-limitations purposes, and was therefore subject to the three-year statute of limitations applicable to oral contracts. 283 Va. at 460, 723 S.E.2d at 384; *see*

Va. Code. Ann. § 8.01-246(4). Here, as in *Gerald T. Dixon*, the Neils allege a breach of contract based on a document executed by only one party, themselves.[9]

The applicable three-year statute of limitations bars the Neils' breach of contract claim. The Amended Complaint alleges that Wells Fargo "immediately" breached the TPP in 2009, when it "reported the Neils as delinquent," and then again breached the TPP in January 2010 when it "failed to provide . . . a permanent modification." J.A. 14-17, 26 (Am. Compl. ¶¶ 29, 34, 35, 38, 39, 93, 95, 99). Thus, even if a breach of contract claim could be stated based on the TPP, it accrued in 2009, certainly no later than January 2010. *See* Va. Code. Ann. § 8.01-230 (claim accrues "when the breach of contract occurs . . . , and not when the resulting damage is discovered"). The original Complaint in this case was filed on March 13, 2013, more than three years after any breach of contract claim accrued and outside the applicable statute of limitations. *See* ECF Dkt. No. 1-1.

---

[9] In contrast to *Gerald T. Dixon*, the Neils seek to charge Wells Fargo with the breach even though Wells Fargo did not execute the document, as it would only be signed if they qualified for the offer.

**B.**     **Count II does not state a claim for slander of title.**[10]

In order to state a valid slander of title claim under Virginia law, a plaintiff must allege facts showing "(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages." *Allison v. Shapiro & Burson, LLP*, No. 1:09CV00057, 2009 WL 4015410 (W.D. Va. Nov. 19, 2009) (quoting *Lodal v. Verizon Va., Inc.,* 74 Va. Cir. 110, 2007 WL 1360893, at *5 (Va. Cir. Ct. 2007)); *see also Lomah Elec. Targetry, Inc. v. ATA Training Aids Australian Party Ltd*., 828 F.2d 1021, 1022 (4th Cir. 1987) ("Although there is no authoritative Virginia precedent, the federal district courts in both districts of Virginia have concluded that the tort is recognized by the law of Virginia.").

The district court properly dismissed the Neils' slander of title claim because the Neils had "fail[ed] to allege slanderous or false words and concede[d] that they were not current on the Note at the time of the foreclosure sale," which meant that the foreclosure sale resulted from the Neils being in default on the loan. J.A. 165. The Amended Complaint simply does not append the deed or recite any specific false words in the Trustee's Deed. *See Cherokee Corp. v. Chicago Title Ins. Corp.*,

---

[10] If the Amended Complaint does not state a claim for breach of contract, then Counts II through IV must also fail, as their survival depends on the Neils' claimed right to a permanent loan modification. However, even if the breach of contract claim were viable, Counts II through IV fail to state claims for independent reasons.

35 Va. Cir. 19 (1994) (sustaining demurrer where "[n]o specific words constituting slander were alleged . . . [and] the exact words stated need to be alleged").

The Amended Complaint also does not allege that the Neils were current on the loan when the foreclosure sale occurred, and the Neils make no such assertion on appeal. To the contrary, the Amended Complaint indicates that after the Neils decided not to pay any outstanding, overdue amounts after the HAMP denial, they also decided not to make full monthly payments going forward. J.A. 20, 21-22 (Am. Compl. ¶¶ 60, 68). This admission demonstrates that they were in default on the Note.

Moreover, the Trustee's Deed is protected by a qualified privilege, and the Neils must show that the recordation was made with actual malice. *See Wright v. Castles*, 232 Va. 218, 224, 349 S.E.2d 125, 129 (1986)*; Warren v. Bank of Marion*, 618 F. Supp. 317, 324-25 (W.D. Va. 1985) (citing *Preston v. Land*, 220 Va. 118, 255 S.E.2d 509, 511 (1979). Actual malice is shown by the defendant's knowledge of falsity or by his reckless disregard for the truth. *See Raytheon Technical Servs. Co. v. Hyland*, 273 Va. 292, 641 S.E.2d 84, 89-90 (2007); *Wright*, 232 Va. at 224, 349 S.E.2d at 129. The Amended Complaint does not allege any facts to support the conclusory allegation that Appellees "knew they did not have a valid interest in the Property and that [the Neils were] not in default." J.A. 28 (Am. Compl. ¶ 102). To the contrary, the Amended Complaint details the Neils'

efforts to obtain a loan modification and the ultimate failure of that effort, and, as shown above, indicates that they in fact were in default.

An action for slander of title is not based on the slanderous words, but the "special damages for the loss sustained by reason of the speaking and publication of the slander." *Lodal v. Verizon Va., Inc.,* 74 Va. Cir. 110, 112 (2007). Special damages are damages actually suffered as a result of the slanderous words. *Koz v. Wells Fargo Home Mortg.*, 83 Va. Cir. 96 (2011). Here, the damages alleged are purely speculative – "special damages arising from lost opportunities for credit." J.A. 28-29 (Am. Compl. ¶ 103).

## C.    Count III does not state a claim for abuse of process.

The sole act alleged in the Amended Complaint to constitute an "abuse of process" is "recording the [Trustee's Deed] … as a whip to force [the Neils] … into accepting egregious and usurious terms on any delinquent amount that the Defendants indicated was past due." J.A. 29 (Am. Compl. ¶ 105). The Amended Complaint does not plausibly allege the elements of abuse of process under Virginia law, which are: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Montgomery v. McDaniel*, 628 S.E.2d 529, 531 (2006). Indeed, the Amended Complaint does not even identify any "process" that was abused as that term has been construed by Virginia courts. The district court properly dismissed this claim

31

because the Neils "were merely asked to make payments under the original terms of their loan." J.A. 165-66 [ECF Dkt. No. 23 at 4-5].

The Neils allege no facts which identify "the existence of an ulterior purpose" in the Amended Complaint or in their Appellate Brief.[11] For example, there is no allegation that the recordation of the Trustee's Deed was used "for some collateral object" rather than "the purpose for which [they were] . . . designed by law." *See Ross v. Peck Iron & Metal Co.*, 264 F.2d 262, 267-68 (4th Cir. 1959) (citing numerous Virginia precedents). Pecuniary gain is "implausible as an ulterior motive because a primary motive or objective of any business or lending enterprise is pecuniary profit." *Adams v. Samuel I. White, P.C.*, 2011 U.S. Dist. LEXIS 98590 (E.D. Va. Aug. 31, 2011) (holding that pecuniary gain alone is not a sufficient ulterior purpose to sustain an abuse of process claim).

The Amended Complaint also fails to allege an "act that is not proper in the regular conduct" of a foreclosure. Foreclosing on the Property and recording the documents cannot constitute an abuse of process because "[a] legitimate use of

---

[11] The Amended Complaint does not specify any terms the Neils were offered to avoid foreclosure that were "egregious", "usurious" or somehow designed to increase the Lender's profits on the loan, or the Neils' acceptance of such terms. These conclusory allegations are not entitled to deference and do not plausibly state a usurious motive. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 556-57, 570; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process." *Donohoe Constr. v. Mount Vernon Assoc.,* 235 Va. 531, 540, 369 S.E.2d 857, 862 (1988) (citing *Glidewell v. Murray-Lacy,* 124 Va. 563, 569, 98 S.E. 665, 667 (1919)); *see also Ross*, 264 F.2d at 267-68 ("The regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.") (citing, *inter alia*, *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116 (1949)).

The timing of the alleged events also prevents an inference of any abuse of process. Any offending act constituting an abuse of process must occur *after* the issuance of the process. *Triangle Auto Auction, Inc. v. Cash*, 238 Va. 183, 186, 380 S.E.2d 649, 651 (1989) (citing *Donohoe* , 235 Va. at 540, 369 S.E.2d at 862). The Neils argue that "Wells Fargo . . . abused the non-judicial foreclosure process by recording documents among the land records and scheduling six foreclosure sales." Appellants' Br. at 29. Even assuming, *arguendo*, both that scheduling the foreclosure sales was wrongful and that recording documents after foreclosure could constitute "process," no wrongful acts have been alleged after the foreclosure and recordation. *See Donohoe*, 235 Va. at 541, 369 S.E.2d at 863 ("The evidence fails to establish, however, that *after filing the lien*, Donohoe committed any 'act in the use of the process not proper in the regular prosecution of the proceeding.'") (emphasis added).

33

Finally, a nonjudicial foreclosure is not a "process" for purposes of an abuse of process claim.[12] Under Virginia law "process" is something that issues from a court, and with compulsory authority, such as a summons, order, writ, warrant or subpoena. *See Ubl v. Kachouroff*, 937 F. Supp. 2d 765, 769 (E.D. Va. 2013) (citing *Ross*, 264 F.2d at 267; *Donohoe*, 369 S.E.2d at 862; *Glidewell*, 98 S.E. at 670); *Vuyyuru v. Jadhav*, 3:10-CV-173, 2011 WL 1483725 (E.D. Va. Apr. 19, 2011), *aff'd*, 501 F. App'x 294 (4th Cir. 2012) ("A plaintiff must be served with some form of process—such as a summons, writ, subpoena, or notice of deposition—in order to claim the process was abused.") (citations omitted); Va. Code. Ann. § 1-237 ("'Process' includes subpoenas, the summons and complaint in a civil action, and process in statutory actions."); *cf.* Va. Code. Ann. §§ 8.01-114, -119, -146, -292 (referring to process as issuing from a court). The alleged foreclosure and recordation of attendant documents do not involve the issuance of any process compelling or forbidding any action by the Neils.

**D.    No claim for quiet title exists.**

The Neils' request to "remove a cloud on the title" is known as a claim to quiet title. A quiet title action is "no more than an equitable proceeding to remove a cloud from a title where the instrument or other proceeding constituting the cloud

---

[12] Appellants' Brief cites to *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006), but that case merely stands for the inapposite proposition that foreclosure by a trustee under a deed of trust constitutes an attempt to collect a debt under the Fair Debt Collections Practices Act. *See id.*

may be used injuriously to affect the plaintiff's title." *Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, 2011 U.S. Dist. LEXIS 130335, 1-2 (W.D. Va. Nov. 10, 2011). A cloud on title is "an outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate." *Day v. Vaughn & Usilton*, 193 Va. 168, 172 (1951).

The Neils argue that a cause of action for quiet title exists in Virginia under certain facts. However, the Neils ignore the plethora of case law in Virginia and this circuit that demonstrate a quiet title claim is not available based on the facts presented. An action to quiet title must be based on the premise that a person with good title to property should not be subjected to various future claims against that title. *Neff v. Ryman*, 100 Va. 521, 524, 42 S.E. 314, 315 (1902); John L. Costello, VIRGINIA REMEDIES § 20.07 at 20-38, 20-39 (3d ed. 2005). Numerous district court decisions applying Virginia law in this Circuit - including several affirmed by this Court - have held that when bringing a quiet title claim regarding property subject to a mortgage, a plaintiff must allege that he has fully satisfied his obligations under the note and the deed of trust or that the underlying debt was paid, forgiven, or cancelled. *See Jimenez v. Citibank, N.A.,* Record No. 101956, slip op. at 7 (Va. Supreme Ct. Dec. 16, 2011) (citing *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009)); *Mabutol v. Fed. Home Loan Mortg. Corp.*, No. 2:12cv406, 2013 WL 1287709 (E.D. Va. Mar. 25, 2013); *Townsend v. Fannie*

*Mae*, 923 F.Supp. 2d 828 (W.D. Va. 2013); *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12–CV–617, 2013 WL 350527 (E.D. Va. Jan. 29, 2013); *Blick v. Wells Fargo Bank, N.A.*, No. 3:11–cv–00081, 2012 WL 1030137 (W.D. Va. Mar. 27, 2012), *aff'd,* 474 F. App'x 932 (4th Cir. 2012) ("we affirm for the reasons stated by the district court"); *Estrella v. Wells Fargo Bank, N.A.*, No. 2:11cv414, 2011 WL 6825619 (E.D. Va. Dec. 28, 2011), *aff'd,* 497 Fed.Appx. 361 (4th Cir. 2012); *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714 (W.D. Va. 2011); *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689 (E.D. Va. 2010), *aff'd*, 441 F.App'x 166 (4th Cir. 2011).    The Amended Complaint does not allege that the Neils have satisfied the underlying debt, but instead pleads that the Property was encumbered by a mortgage that they sought to modify.  As they do not allege that they have satisfied the debt encumbering the Property, the district court correctly concluded that the Neils had not stated a claim for quiet title."  J.A. 166 [ECF Dkt. No. 23 at 5].

## CONCLUSION

For the reasons stated above, Appellees respectfully request that the Court enter an Order affirming the September 4, 2013 Order and Opinion of the Eastern District of Virginia and dismissing this appeal in its entirety.

## <u>NO REQUEST FOR ORAL ARGUMENT</u>

Respectfully Submitted,


*/s/ John D.V. Ferman*


Amy S. Owen
John D.V. Ferman
Nicholas V. Cumings
BRIGLIAHUNDLEY, PC
3975 University Drive, Suite 100
Fairfax, Virginia 22030
(703) 883-9101

*Counsel for Appellees BWW Law Group, LLC and Wells Fargo Bank, N.A.*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-2390        **Caption:** Jay Neil v. Wells Fargo Bank, N.A.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____9,585_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ ]    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) John D.V. Ferman

Attorney for appellees

Dated: 2/10/14

# CERTIFICATE OF SERVICE

I certify that on <u>2/10/14</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Christopher E. Brown                    Todd Lewis, Esq.
Jessica M. Carter                       The Lewis Law Group, P.C.
BROWN, BROWN & BROWN, PC                 2200 Wilson Blvd., Suite 102-50
6269 Franconia Rd.                       Arlington, Virginia 22201
Alexandria, VA 22310

<u>/s/ John D.V. Ferman</u>                  <u>2/10/14</u>
        Signature                                  Date